# KATHLEEN M. BUDRAWICH *v.* EDWARD BUDRAWICH, JR.

## (AC 32215)

DiPentima, C. J., and Bear and Lavery, Js.

Argued October 13—officially released November 29, 2011

*Lori Welch-Rubin,* with whom, on the brief, was *Noah Eisenhandler,* for the appellant (defendant).

*Louise T. Truax,* with whom, on the brief, was *Mary T. Surette,* for the appellee (plaintiff).

*Opinion*

BEAR, J. The defendant, Edward Budrawich, Jr., appeals from the postdissolution judgment of the trial court, modifying certain financial orders in favor of the plaintiff, Kathleen M. Budrawich. On appeal, the

defendant claims that the court improperly (1) modified child support and ordered him to pay, in addition to $100 in weekly child support, a specific dollar amount each week for anticipated expenses related to the children, (2) modified the personal property award and (3) ordered him to pay a definite amount as satisfaction of an order that he transfer to the plaintiff 55 percent of restricted stock that was not vested at the time of the judgment of dissolution. We reverse the judgment of the trial court.

The following facts are relevant to our resolution of the issues on appeal. The parties were married in 1982, and three children were born of the marriage—the first in March, 1989, the second in April, 1992, and the third in June, 1995. The plaintiff filed an action seeking dissolution of the parties' marriage in June, 2004. In June, 2006, the parties reached an agreement regarding a parenting plan, which the court found to be in the best interests of the children. Accordingly, it approved and incorporated the agreement by reference into the judgment of dissolution. The parties had agreed, in part, that neither of them would be responsible for child support payments to the other because they were sharing physical custody of the children. They also agreed, however, that they would share equally in the expenses of the children, including such things as sports expenses, dance expenses, college application and preparation expenses and additional identified categories of expenses. Each party was to submit proof of the payment of these expenses to the other party on the first day of the month following the occurrence of such expenses, and the other party was to reimburse 50 percent of those costs by the fifteenth of the month. The parties also entered into a binding arbitration agreement in November, 2006, and a corrected decision and award was issued on May 30, 2007, which the court approved at the time of dissolution. The arbitrator

decided, in part, that the defendant would have first choice of any items located in the plaintiff's garage or cellar and that the plaintiff could have or dispose of the items that were remaining thereafter. After approving the parties' agreement and the decision of the arbitrator, on November 28, 2007, the court rendered judgment dissolving the parties' twenty-five year marriage.

Subsequently, each of the parties filed motions for contempt alleging that the other was not in compliance with the orders of the court, including the plaintiff's May 21, 2009 motion alleging that the defendant was in contempt for failing to transfer stock options to the plaintiff and the defendant's July 30, 2009 motion alleging that the plaintiff was in contempt for failing to comply with the arbitration decision incorporated in the judgment. On November 18, 2008, the plaintiff also filed a motion for modification of child support, which included a requested modification as to the method of payment of the additional expenses on behalf of the minor children, on the ground that the defendant's income had increased significantly and that he had failed to reimburse the plaintiff his 50 percent of the additional expenses of the children. On December 31, 2009, the court rendered its decision on these motions. On January 13, 2010, the plaintiff filed a motion for clarification of the court's decision. On January 19, 2010, the defendant also filed a motion for clarification. Despite denying both motions, on March 23, 2010, the court issued an order clarifying its December 31, 2009 decision. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly modified the parties' agreement as to child support, ordering him to pay $100 per week, and further erred

in ordering him to pay, in addition to $100 per week for child support, the specific dollar amount of $363 weekly as his contribution toward the children's expenses. He argues, inter alia, that the parties had agreed to deviate from the child support guidelines because they were sharing physical custody of the children and that the shared custody arrangement had not changed. He explains that with the court's modification, his total support now is $463, which exceeds the child support guidelines, fails to take into consideration the parties' shared custody arrangement and is not based on evidence found in the record. He also contests the court's finding that the plaintiff's income had decreased substantially since the dissolution.[1] We agree that the court's order was improper.

"General Statutes § 46b-86 governs the modification of a child support order after the date of a dissolution judgment. . . . Section 46b-86 (a) permits the court to modify child support orders in two alternative circumstances. Pursuant to this statute, a court may not modify a child support order unless there is first either (1) a showing of a substantial change in the circumstances of either party or (2) a showing that the final order for child support substantially deviates from the child

---

[1] The defendant also asserts that the "plaintiff moved for a modification of child support, claiming that [his] income had substantially increased and that her income had substantially decreased." We note that our review of the plaintiff's motion reveals that she moved for a modification on the basis of a substantial increase in the defendant's income. The motion made no mention of a decrease in the plaintiff's income, and, although we agree that the court found that the plaintiff's income had decreased and that the defendant's income had increased, the plaintiff's claim of a substantial change of circumstances was not based on any decrease in her income. It was based solely on the alleged substantial increase in the defendant's income. Additionally, we note that during the hearing on the motions, the plaintiff's counsel also requested that the court consider that the children now were at the plaintiff's home every day after school and that the parties were not sharing custody to the same extent as they had been at the time of dissolution.

support guidelines. . . . Both the substantial change of circumstances and the substantial deviation from child support guidelines' provision establish the authority of the trial court to modify existing child support orders to respond to changed economic conditions. The first allows the court to modify a support order when the financial circumstances of the individual parties have changed, regardless of their prior contemplation of such changes. The second allows the court to modify child support orders that were once deemed appropriate but no longer seem equitable in the light of changed social or economic circumstances in the society as a whole. . . .

"As to the substantial change of circumstances provision of § 46b-86 (a), [w]hen presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court finds a substantial change in circumstances, it may properly consider the motion and . . . make an order for modification. . . . A party moving for a modification of a child support order must clearly and definitely establish the occurrence of a substantial change in the circumstances of either party that makes the continuation of the prior order unfair and improper. . . . The power of the trial court to modify the existing order does not, however, include the power to retry issues already decided . . . or to allow the parties to use a motion to modify as an appeal. . . . Rather, [t]he court has the authority to issue a modification only if it conforms the order to the distinct and definite changes in the circumstances of the parties. . . . The inquiry, then, is limited to a comparison between the current conditions and the last court order. . . . The party seeking modification bears the burden of showing the existence of a substantial change in the circumstances." (Citations omitted; internal quotation marks

omitted.) *Weinstein* v. *Weinstein*, 104 Conn. App. 482, 491–93, 934 A.2d 306 (2007), cert. denied, 285 Conn. 911, 943 A.2d 472 (2008).

The following additional facts are relevant to our analysis. The parties' agreement, which was incorporated in the judgment of dissolution, provided that the parties would share custody of their children and that "[n]either party shall pay child support to the other at the present time, based upon the shared physical custody situation presently in place. The parties agree to deviate from the [c]hild [s]upport [g]uidelines on this basis." The agreement also provided that the parties would share the expenses related to: camp; school activities, including, but not limited to, field trips, photographs, school supplies, classroom contributions, homecoming, prom and graduation; sport activities, including enrollment, uniforms, photographs and equipment; dance activities, including enrollment, costumes, photographs and equipment; and college applications, PSAT and SAT testing preparation and their results. The parties also agreed to share all reasonable medical expenses related to the children's care. The agreement further provided that receipts for proof of payment of these expenses would be provided to the other party on the first day of the month following the incurrence of the expenses and that reimbursement would be made by the fifteenth of the month.

On the basis of a claimed substantial change in the defendant's income and the defendant's failure to reimburse the plaintiff for the children's expenses in accordance with their agreement, the plaintiff filed a motion for modification of child support wherein she requested that the defendant be ordered to pay "an appropriate amount of child support" and a specific amount toward the children's expenses on a quarterly basis. The motion further stated that the plaintiff would file an accounting with the defendant each quarter and that the defendant

would be issued a credit for any excess payment, which would be applied to the next quarterly payment.

In a December 31, 2009 decision, the court found that the "plaintiff's income has substantially decreased to $110,000 per year and the defendant's income has increased to $178,000 per year since the entry of the June 9, 2006 order.[2] At this time, the defendant's income is $68,000 greater than the plaintiff's." In an order clarifying the judgment, the court ordered, in part, that the defendant pay $100 per week for child support and $363 per week toward the children's expenses, in lieu of the 50 percent contribution that had been agreed on previously.

The defendant complains on appeal that the combined child support order exceeds the child support guidelines, that the $363 for expenses has no basis in evidence and is "outside the extraordinary expenses permitted for an additional support order that deviates upwards from the [g]uideline[s]," that the court improperly compared the parties' current income with their income as of June 9, 2006, rather than the date of the dissolution judgment, that the court improperly found that the plaintiff's income had decreased substantially, and that the court improperly modified the child support order when there was no change in the deviation criteria of shared custody of the children. We conclude that the court abused its discretion in failing to find the presumptive amount of child support pursuant to the guidelines and in issuing the combined child support

[2] The June 9, 2006 order was a pendente lite order. The date of the dissolution was November 28, 2007. The court should have applied the facts existing on the date of the dissolution when the final orders were entered instead of those existing on the earlier date in determining whether a modification was justified. See General Statutes § 46b-86; *Weinstein* v. *Weinstein*, supra, 104 Conn. App. 491–93 (court's inquiry is limited to comparison between current conditions and conditions at time of last court order).

order without justifying a deviation from the guidelines.[3]

"To ensure the appropriateness of child support awards, General Statutes § 46b-215a provides for a commission to oversee the establishment of child support guidelines. General Statutes § 46b-215b requires that '[t]he . . . guidelines . . . be considered in all determinations of child support amounts . . . . [T]here shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount of support . . . . A specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case, as determined under criteria established by the Commission for Child Support Guidelines under section 46b-215a, shall be required in order to rebut the presumption in such case.'

"The guidelines incorporate these statutory rules and contain a 'schedule' for calculating 'the basic child support obligation,' which is based on the number of children in the family and the combined net weekly income of the parents. Regs., Conn. State Agencies § 46b-215a-2b (f). Consistent with . . . § 46b-215b (a), the guidelines provide that the support amounts calculated thereunder are the correct amounts to be ordered by the court unless rebutted by a specific finding on the record that the presumptive support amount would be inequitable or inappropriate. Regs., Conn. State Agencies § 46b-215a-3 (a). The finding must include a statement of the presumptive support amount and explain how application of the deviation criteria justifies the variance. Id.;

---

[3] Because we conclude that the court abused its discretion in failing to find the presumptive amount of child support under the guidelines and in entering a combined support order without justifying a deviation from the guidelines, we further conclude that a consideration of the defendant's related arguments regarding the child support order are unnecessary, the matter necessarily having to be remanded for a new hearing.

see also General Statutes § 46b-215b (a). This court has stated that the reason why a trial court must make an on-the-record finding of the presumptive support amount before applying the deviation criteria is to 'facilitate appellate review in those cases in which the trial court finds that a deviation is justified.' *Favrow* v. *Vargas*, 231 Conn. 1, 29, 647 A.2d 731 (1994). In other words, the finding 'will enable an appellate court to compare the ultimate order with the guideline amount and make a more informed decision on a claim that the amount of the deviation, rather than the fact of a deviation, constituted an abuse of discretion.' Id." *Kiniry* v. *Kiniry*, 299 Conn. 308, 319–20, 9 A.3d 708 (2010).

In the present case, although the parties earlier had agreed to deviate from the child support guidelines due, at least in part, to the shared custody arrangement, the plaintiff alleged a substantial change in circumstances because of the alleged substantial increase in the defendant's income. The court, although recognizing that the parties previously had agreed to a deviation, and finding that the defendant's income substantially had increased, made no findings relating to the modified order as to the presumptive amount of support under the guidelines, nor did it set forth any findings to justify a deviation from the presumptive amount of support under the guidelines.[4] On this basis, we conclude that

---

[4] In *Kiniry* v. *Kiniry*, supra, 299 Conn. 325, our Supreme Court explained: "[I]t is good policy to establish a presumptive support amount in cases involving shared custody and equal parenting time because a guideline of this nature provides courts with a means of comparing a party's request for child support with a fair and objective standard . . . thus enabling courts to make more informed decisions and ensuring uniformity and consistency in their application of the guidelines. The same rationale applies to cases in which one or both parties seek modification of an existing child support order to alter or to eliminate a present financial award or to establish a financial award where none existed before due to changes in the parties' circumstances." (Citation omitted.)

the court abused its discretion and that the matter must be remanded for a new hearing.[5]

## II

The defendant next claims that the court erred when it misread and modified the arbitrator's decision and award on personal property, which had been incorporated by the court in the dissolution judgment. We agree.

"[C]ourts have no inherent power to transfer property from one spouse to another; instead, that power must rest upon an enabling statute. . . . The court's authority to transfer property appurtenant to a dissolution proceeding rests on [General Statutes] § 46b-81. That section provides in relevant part: At the time of entering a decree . . . dissolving a marriage . . . the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . . General Statutes § 46b-81 (a). Accordingly, the court's authority to divide the personal property of the parties, pursuant to

---

[5] We further note, however, that the court's modification of child support erroneously was based on the alleged changes in the parties' gross income rather than their net income. "This court and other courts in our state have repeatedly indicated that '[i]t is well settled that a court must base child support and alimony orders on the available net income of the parties, not gross income.' *Morris* v. *Morris*, 262 Conn. 299, 306, 811 A.2d 1283 (2003); *Auerbach* v. *Auerbach*, 113 Conn. App. 318, 338, 966 A.2d 292, cert. denied, 292 Conn. 901, 971 A.2d 40 (2009); see also *Fahy* v. *Fahy*, 227 Conn. 505, 517, 630 A.2d 1328 (1993) (standard for determining alimony is net income, not gross income); *Collette* v. *Collette*, 177 Conn. 465, 469, 418 A.2d 891 (1979) (same); *Tobey* v. *Tobey*, 165 Conn. 742, 747, 345 A.2d 21 (1974) ('Gross earnings is not a criterion for awards of alimony. It is the net income, which is available to the defendant, which the court must consider.'); *Heard* v. *Heard*, 116 Conn. 632, 634, 166 A. 67 (1933) (net income used to determine alimony); *Ludgin* v. *McGowan*, 64 Conn. App. 355, 358–59, 780 A.2d 198 (2001) (reversing trial court's financial orders when court relied on parties' gross rather than net income); *Febbroriello* v. *Febbroriello*, 21 Conn. App. 200, 202, 572 A.2d 1032 (1990) (trial court must base periodic alimony and child support orders on available net income); *Kaplin* v. *Kaplan*, 1 Conn. Sup. 175, 175–76 (1935) (modifying alimony based on defendant's net income)." *Maturo* v. *Maturo*, 296 Conn. 80, 140, 995 A.2d 1 (2010) (*McLachlan, J.*, concurring).

§ 46b-81, *must be exercised, if at all, at the time that it renders judgment dissolving the marriage.*" (Emphasis added; internal quotation marks omitted.) *Hirschfeld* v. *Machinist*, 131 Conn. App. 352, 358, 29 A.3d 159 (2011) (holding court cannot modify property award after judgment of dissolution enters).

The following additional facts are relevant to our analysis. The parties submitted to binding arbitration on a number of issues prior to the judgment of dissolution. On May 30, 2007, the arbitrator ordered in relevant part that the defendant "shall have the first choice of any items located in [the plaintiff's] garage or cellar. [The plaintiff] shall then have her choice of the remaining items. Anything left that neither party wants shall be donated to charity or disposed of by [the plaintiff]." The arbitrator's decision was accepted by the court in its November 28, 2007 dissolution judgment. On or about July 30, 2009, the defendant filed a motion for contempt asserting that the plaintiff had failed to comply with the decision and award of the arbitrator. In its December 31, 2009 decision, specifically on the issue of the defendant's contempt motion, the court, however, stated that the defendant "was to have first choice of any item located in the garage or cellar and [the] plaintiff was to have her choice of the remaining items which means everything after his one selection if she wanted the balance. [The] [d]efendant shall select the one item if he has never made a selection and it shall be his absolutely. If that item has been removed or sold by the plaintiff she shall recompense him for its value."

The defendant contends on appeal that the court's ruling is contrary to the arbitrator's decision and award and to the prior orders of the court. He asks that we reverse the decision and remand the matter for a hearing on the value of the property that was in the plaintiff's garage and cellar because she has admitted that she has

disposed of most of these items. The plaintiff argues, however, that the defendant waived any claim to this personal property by failing to make a timely effort to remove the property from her home or to provide a list of the items he wanted, despite her request that he do so. She also argues that the evidence showed that some of the items were destroyed in a flood and that the defendant's wilful failure to effectuate the orders of the court in a timely manner should not be held against her. We agree that the court's order was contrary to the arbitrator's decision and award. Nevertheless, we further conclude that the court, in its memorandum of decision, failed to make any relevant factual findings on the issues raised by this claim, and, therefore, the matter must be returned to the trial court for a rehearing on the defendant's contempt motion and the plaintiff's defenses thereto.[6]

### III

The defendant's final claim is that the court erred in ordering that he pay a definite sum to satisfy the court's order regarding the transfer of stock and stock options. Specifically, he claims: "Because the restricted stock

---

[6] We are mindful that the court, during the plaintiff's testimony, had a brief conversation with counsel and explained that it recognized that the arbitrator's decision awarded the defendant first choice of all items in the plaintiff's garage and cellar. It questioned, however, whether, because there had been a lapse of between two and three years since that decision without the defendant seriously attempting to retrieve those items, the plaintiff had the right to do with the items whatever she wanted. The court, however, did not make any findings in its memorandum of decision related to this issue.

Additionally, during the hearing, counsel asked the defendant if he could put together a list of all the items that he wanted, and he said that he could do so. The court then asked that the defendant provide it, before 5 p.m., with a list of all the items the defendant was seeking. In her posttrial memorandum, the plaintiff did not object to returning several items that the defendant sought but stated that the parties' son was using several of the specified items, and she also explained that many of the items either had been discarded because of damage or were never among the items in her garage or cellar.

was unvested at the time of dissolution, the trial court erred when it ordered a definite amount to satisfy the transfer of the 55 [percent] of the stock and options awarded." We conclude that the court's order on the plaintiff's May 21, 2009 motion for contempt was improper and the matter must be remanded for a new hearing.

As explained previously in this opinion, "§ 46b-86 (a) deprives the Superior Court of continuing jurisdiction over that portion of a dissolution judgment providing for the assignment of property of one party to the other party . . . . A court, therefore, does not have the authority to modify the division of property once the dissolution becomes final. . . . [Despite this rule, however] the court . . . does have the authority to issue postjudgment orders effectuating its judgment." (Citation omitted; internal quotation marks omitted.) *Stechel* v. *Foster*, 125 Conn. App. 441, 446–47, 8 A.3d 545 (2010), cert. denied, 300 Conn. 904, 12 A.3d 572 (2011). "[T]he trial court's continuing jurisdiction to effectuate its prior judgments, either by summarily ordering compliance with a clear judgment or by interpreting an ambiguous judgment and entering orders to effectuate the judgment as interpreted, is grounded in its inherent powers, and is not limited to cases wherein the non-compliant party is in contempt . . . ." (Internal quotation marks omitted.) *Fuller* v. *Fuller*, 119 Conn. App. 105, 112, 987 A.2d 1040, cert. denied, 296 Conn. 904, 992 A.2d 329 (2010); see also *Mickey* v. *Mickey*, 292 Conn. 597, 604, 974 A.2d 641 (2009).

In this case, the court, at the time it entered the judgment of dissolution, ordered, in relevant part: "The balance of the parties' assets listed on Attachment A shall be divided with the [plaintiff] receiving 55 [percent] and the [defendant] receiving 45 [percent] of the total. The assets shall be divided so that the [plaintiff]

receives 55 [percent] of any liquid assets and the [defendant] receives 45 [percent] of any liquid assets." Attachment A, in addition to listing saving accounts, individual retirement accounts, 401 (k) accounts and other marital property, also listed stock options, stock that was both vested and unvested, and restricted unvested stock.[7] Each asset on Attachment A also had a listed fair market value.

On May 21, 2009, the plaintiff filed a motion for contempt, alleging that the defendant had failed to transfer to her the stock options, restricted stock and Pitney Bowes stock that had been awarded to her in the dissolution judgment. In response to that motion, the court

[7] Specifically, Attachment A provides:
"Attachment A

### Budrawich [M]arital [P]roperty

| Owner and Asset | Fair Market Value |
|---|---|
| Wife—Bank of America savings account | $ 3,038.04 |
| Wife—Bank of America checking | -0- |
| Wife—stock options | $ 2,060.00 |
| Wife—IRA | $ 425,768.25 |
| Wife—Pitney Bowes pension | $ 97,676.00 |
| Wife—Schwab IRA | $ 31,382.30 |
| **TOTAL** | **$ 559,924.59** |
| | |
| Husband—Bank of America savings | $ 2,620.41 |
| Husband—Bank of America checking | $ 343.00 |
| Husband—Pitney Bowes stock | $ 18,205.04 |
| Husband—Columbia Core IRA | $ 12,321.14 |
| Husband—Columbia Core short-term bond IRA | $ 7,988.03 |
| Husband—Schwab IRA | $ 10,738.35 |
| Husband—T. Rowe Price 401 (k) | $ 30,886.17 |
| Husband—Merrill Lynch (Chrysler) 401 (k) | $ 709,793.39* |
| Millick and Sexton | $ 179,945.00 |
| Daimler Chrysler pension | $ 91,330.00 |
| Stock options (850 at $45.93 25% vested) | $ 9,972.62 |
| Restricted Stock (not [v]ested 278 shares) | $ 13,046.54 |
| **TOTAL** | **$1,087,189.69** |

Escrow Account (proceeds from sale of home) $179,945.00

[The plaintiff] received $550,000 and [the defendant] received $750,000 from the sale of the marital home.

[The plaintiff] liquidated $359,278.00 composed of stock and a 401k loan to purchase her replacement home from 2005–2007. In 2006, [the defendant] liquidated $28,245 of stock and in July 2007, took a $310,000 loan from his *Daimler Chrysler 401k above."

ordered the defendant to pay "55 [percent] of the Pitney-Bowes stock options and restricted stock in the amount of $21,756.31." The court, however, improperly ordered the defendant to pay a specific monetary amount rather than ordering him to transfer the actual stock and options that had been awarded to the plaintiff. Furthermore, the court failed to make any findings as to the dates on which the restricted or otherwise unvested stock became vested or the value of the stock upon vesting and whether the plaintiff suffered harm due to the defendant's alleged failure to transfer the stock and options in a timely manner.

The judgment of the dissolution court awarded the plaintiff, inter alia, stock and options as listed on Attachment A. Accordingly, we agree with the defendant that the court improperly ordered him to pay to the plaintiff 55 percent of the fair market value, as of November 28, 2007, the date of dissolution, of the stock listed as "restricted stock (not [v]ested 278 shares)." However, we conclude that it is necessary to remand the matter for a complete hearing on the issues raised by the plaintiff's May 21, 2009 motion for contempt.

The judgment is reversed and the matter is remanded for a new hearing on the defendant's July 30, 2009 motion for contempt, the plaintiff's May 21, 2009 motion for contempt and the plaintiff's November 18, 2008 motion for modification.

In this opinion the other judges concurred.