******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LAURI ROSS *v.* BENJAMIN ROSS
(AC 42950)

Keller, Bright and Bear, Js.*

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the postjudgment orders of the trial court modifying the original unallocated alimony and child support order and awarding the plaintiff attorney's fees. The parties' separation agreement, which was incorporated into the dissolution judgment, required the defendant to pay the plaintiff 40 percent of his annual gross base cash salary and 25 percent of his gross cash bonus as unallocated alimony and child support from September, 2016 to March, 2023. In December, 2016, the defendant filed a motion for modification in which he sought to reduce his unallocated alimony and child support payments, alleging that there was a substantial change in circumstances because, inter alia, two of the parties' children had reached the age of majority. The trial court granted the motion for modification and ordered that the percentage of annual gross base salary that the defendant is obligated to pay to the plaintiff as unallocated alimony and child support be reduced to 37.5 percent, retroactive to the date the motion was filed. The court also ordered the defendant to pay $27,500 of the plaintiff's attorney's fees. *Held*:

1. The trial court abused its discretion when it determined the amount of the modified unallocated alimony and child support order; in modifying the original unallocated alimony and child support order, that court failed to unbundle the child support award from the alimony award and failed to consider and apply the child support guidelines and, thereby, to make a finding, as required by the guidelines, as to the presumptive amount of child support payable by the defendant to the plaintiff for the relevant dates, and, if necessary, a finding as to whether, on the basis of the child support guidelines, those amounts were inequitable or inappropriate and a deviation from the guidelines was appropriate.

2. This court declined to reach the merits of the defendant's claim that the trial court abused its discretion by ordering him to pay $27,500 of the plaintiff's attorney's fees; because that court's modified unallocated alimony and child support order will be reconsidered in its entirety on remand, its award of attorney's fees to the plaintiff was remanded for reconsideration in light of the newly calculated child support and alimony awards that will be issued at that time.

Argued May 29—officially released October 13, 2020

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Ansonia-Milford, where the court, *Malone, J.*, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Hon. Robert J. Malone*, judge trial referee, granted the defendant's motion for modification of alimony and child support, issued certain orders and awarded the plaintiff attorney's fees and costs; subsequently, the court, *Hon. Robert J. Malone*, judge trial referee, issued a clarification of its decision, and the defendant appealed to this court. *Reversed*; *further proceedings*.

*Janet A. Battey*, with whom, on the brief, was *Olivia M. Eucalitto*, for the appellant (defendant).

*Christopher G. Brown*, for the appellee (plaintiff).

*Opinion*

KELLER, J. The defendant, Benjamin Ross, appeals from the judgment of the trial court issuing postdissolution financial orders, as well as awarding attorney's fees and costs in favor of the plaintiff, Lauri Ross. On appeal, the defendant claims that the court (1) abused its discretion by failing to apply the child support guidelines, (2) erred by modifying the unallocated alimony and child support order without first unbundling the child support portion from the original order, and (3) abused its discretion by ordering the defendant to pay the plaintiff's attorney's fees. We reverse the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. The parties' marriage was dissolved on September 4, 2013. The judgment incorporated the parties' separation agreement. The parties have four children, three of whom were minors at the time of the dissolution: Noah, who turned eighteen in 2014; Nathaniel, who turned eighteen in 2017; and Claudia, who turned eighteen in May, 2019, and graduated from high school in June, 2019. The separation agreement gave the parties joint legal custody of the minor children, and the plaintiff was given physical custody.

Pursuant to the separation agreement, the defendant was obligated to pay unallocated alimony and child support to the plaintiff. Specifically, the separation agreement provides in relevant part: "Commencing on September 15, 2013, during the lifetime of the parties and until the earlier of the [plaintiff's] remarriage, cohabitation pursuant to statute, or September 15, 2016, whichever shall first occur, the [defendant] shall pay the [plaintiff] on the 15th and last day of each month, as and for unallocated alimony and support the following: (a) [45] percent of his gross base cash salary; and (b) [35] percent of his gross cash bonus. . . .

"Commencing September 16, 2016, during the lifetime of the parties and until the earlier of the [plaintiff's] remarriage, cohabitation pursuant to statute, or March 15, 2023, whichever shall first occur, the [defendant] shall pay to the [plaintiff] on the 15th and last day of each month, as for unallocated alimony and support the following: (a) [40] percent of his gross base cash salary; and (b) [25] percent of his gross cash bonus."

The separation agreement also provides that "[t]he [defendant] shall maintain no less than $2,000,000 of life insurance as long as he is obligated to make payments to the [plaintiff] as hereinbefore set forth in [a]rticle III, and shall name the [plaintiff] as primary beneficiary of said life insurance on his life."

On November 17, 2017, the defendant filed a motion for modification of his unallocated alimony and child support payments. In his motion, the defendant alleged that the following substantial changes in circumstances

had occurred since the dissolution of the marriage: "[T]hree of the parties' four minor children have emancipated.[1] . . . Upon information [and] belief, the plaintiff is engaged and is cohabiting with her fiancé. . . . Upon information and belief, the plaintiff is employed and is earning more than $25,000 per year. . . . The defendant's expenses have increased substantially because he is paying 100 [percent] of the expenses for the parties' two children who are in college. . . . Two million dollars of life insurance is no longer necessary to insure the defendant's alimony and support obligations." (Footnote added.) On the basis of these allegations, the defendant asked the court to "[r]educe the [unallocated] alimony and [child] support payments made by the defendant to the plaintiff," to "[r]educe the amount of life insurance that the defendant is obligated to maintain for the benefit of the [plaintiff]," and to "[o]rder such other and further relief as may be fair and equitable."

On February 23, 2018, the plaintiff filed a motion for attorney's fees in which she moved "under [§] 25-24 of the Practice Book, for an award of [attorney's] fees in order for her to defend and prosecute postjudgment motions."

The court held a hearing on both motions on March 29, April 2, and April 12, 2019.[2] Evidence at trial included the parties' past and current financial affidavits and their current child support guidelines worksheets, filed pursuant to Practice Book § 25-30. In support of her motion for attorney's fees, the plaintiff submitted an affidavit from her attorney, Daniel D. Portanova, in which he represented that he had rendered services to the plaintiff in the amount of $42,582.42 and that there remained a balance to be paid of $82.42.

The parties submitted to the court their current financial affidavits. The parties also introduced into evidence the financial affidavits that each party had submitted at the time of the dissolution of their marriage. As previously noted, the parties also submitted child support guidelines worksheets setting forth the presumptive amount of child support for the one remaining minor child. The plaintiff's worksheet showed a presumptive amount payable from the defendant to the plaintiff of $465 per week. The defendant's worksheet showed a presumptive amount payable by the defendant to the plaintiff of $480 per week.[3]

The defendant also testified as to additional expenses he had paid on behalf of the parties' children. Those expenses included tuition for two of the children to attend college, other college-related expenses, as well as financial assistance that he provided to the children in connection with the purchase of cars, the purchase of car insurance, the purchase of cell phones, health care costs, and other miscellaneous expenses.[4]

The court made the following findings in its April 29, 2019 memorandum of decision: "The [plaintiff] is [forty-six] years of age. She has a [general equivalency diploma] and attended Northeastern University and Southern Connecticut State University. She has been treated for depression and anxiety disorders which were diagnosed in February, 2019. She has taken various medications since November, 2018. In February, 2019, she was hospitalized for an overdose. She has a real estate license and works part-time at Bonfire Grill and earns $23 a week as a hostess. She has not worked full-time in a number of years.

"The [defendant] is [forty-seven] years of age and in good health. He attained a [bachelor of arts degree] in finance from Northeastern University. He has been employed with Cohen & Steers, and his annual salary is $330,000. Typically, he receives a cash bonus annually and restricted stock shares annually. In 2018, he received a $274,500 cash bonus and $447,068.70 in restricted shares.

"The present alimony and support order stems from the parties' [dissolution] judgment in article III [§] 3.2 [of the separation agreement] in which it sets forth that, from September 16, 2016 to March 15, 2023 (subject to the [plaintiff's] remarriage or cohabitation), the [defendant] shall pay to the [plaintiff] [40] percent of his gross base salary and [25] percent] of his gross cash bonus.

"The [separation agreement provided the] parties [with] . . . joint legal custody of their three minor children and the [plaintiff with] physical custody of the minor children.[5] The [defendant's] motion to modify the existing award is based partially on two children attaining the age of [eighteen]. The remaining minor child will attain the age of [eighteen] on May 19, 2019, and will graduate from high school in June, 2019.

"The other claims for modification alleged by the defendant were cohabitation and that the plaintiff is employed and earning more than $25,000 (a safe harbor provision in the judgment).[6] No evidence was provided to meet the statutory, factual or case law criteria [to establish these grounds] and, therefore, [these claims for modification] are denied.

"The defendant further seeks to reduce a judgment order that he maintain two million dollars of life insurance. Article V [of the separation agreement] address[es] the life insurance obligation. The language is clear that the defendant is to maintain no less than two million dollars of life insurance for as long as he is obligated to make payments to the [plaintiff]. Therefore, that portion of the defendant's motion is denied.

"The defendant further alleges as a basis for modification of his payments to the plaintiff that he pays all of his children's postsecondary education and provide[s] automobiles and insurance for his children. These expen-

ditures, while laudatory, are not required by the judgment and could be ceased at any time by the defendant. Therefore, this argument is not persuasive to the court.

"General Statutes § 46b-86, which addresses the modification of [an] alimony or support order, makes reference to [General Statutes] § 46b-82, which provides for a court to consider evidence provided to meet the criteria in that statute.

"Certainly, it is clear that the [defendant's] financial responsibilities have significantly changed as a result of his two children attaining the age of [eighteen] and completing high school. The youngest child [will reach the age of eighteen in May, 2019, and graduate from high school in June, 2019, when] . . . the [defendant's] financial responsibility [for child support] will end . . . . While these . . . [child support] obligations have/will and do constitute a substantial change of circumstances, the court must review the other statutory criteria together with the evidence provided.

"The incomes of the parties are essentially the same as they existed at the time of the dissolution of marriage. The defendant's estate, however, has increased substantially from approximately $498,000 to $1,799,197.89. The plaintiff's estate has decreased since the date of the dissolution. While the court has received evidence which provides a picture of the plaintiff's fiscal irresponsibility in her expenditures and weekly expenses, it does not appear . . . that their respective estates are and still would be significantly disparate . . . [even if] a more reasonable lifestyle [were] undertaken by the plaintiff. It is noteworthy that she, based upon her education and work experience, will likely never have the earning capacity of the defendant. She is, however, and has been since the date of the judgment, under/unemployed with little reason.

"Therefore, the court orders that the judgment be modified and that the defendant pay to the plaintiff [as unallocated alimony and child support] 37.5 [percent] of his base annual salary. This modification is retroactive to December 6, 2018 . . . [the effective date of] the defendant's motion for modification. The modification further addresses the youngest child attaining the age of [eighteen] and graduating from high school. . . .

"The final postjudgment motion [filed by the plaintiff] addresses her request for attorney's fees. [General Statutes § 46b-62 (a)] provides guidance [for awarding attorney's fees] as well as [when] a failure of the court to award counsel fees would undermine the court's other financial orders. See *Maguire* v. *Maguire*, 222 Conn. 32, 43–45, 608 A.2d 79 (1992);[7] *Berzins* v. *Berzins*, 306 Conn. 651, 657, 51 A.3d 941 (2012); *Pena* v. *Gladstone*, 168 Conn. App. 141, 158–59, 144 A.3d 1085 (2016). Therefore, the court orders the defendant to pay the sum of $27,500 to the plaintiff's attorney. . . for the plaintiff

. . . by May 31, 2019." (Footnotes added.)

On May 1, 2019, the defendant filed a motion for clarification with respect to whether the court intended to eliminate his obligation to pay the plaintiff 25 percent of his gross cash bonus as unallocated alimony and support, effective December 6, 2018. On May 3, 2019, the court clarified its order by stating that its order did not alter or modify the percentage of the defendant's gross cash bonus ordered to be paid to the plaintiff as unallocated alimony and support at the time of the dissolution. The defendant filed this appeal on May 17, 2019.

I

First, the defendant claims that the court abused its discretion when it determined the amount of the modified unallocated alimony and child support award. Specifically, he claims that the court failed to consider what portion of the unallocated award constituted child support and what portion constituted alimony. Central to the defendant's claim is that the court, prior to ruling on his motion for modification, failed to first apply the child support guidelines in determining what portion of the 2013 unallocated award, as reduced in 2016 in accordance with the parties' separation agreement and consisting of set percentages of the defendant's gross cash salary and gross cash bonus, should be categorized as child support.[8] We agree.

We begin by setting forth the applicable standard of review. "The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law." (Citations omitted; internal quotation marks omitted.) *Gabriel* v. *Gabriel*, 324 Conn. 324, 336, 152 A.3d 1230 (2016).

We first turn to the defendant's assertion that, in ruling on the motion for modification, the court failed to unbundle the child support and alimony awards from the unallocated order that was effective on September 16, 2016, and required him to pay a percentage of both his gross base cash salary *and* gross cash bonus as unallocated child support and alimony. We begin with § 46b-86 (a), which sets forth the manner in which post-

dissolution modification of alimony and support orders may occur. Specifically, § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support . . . may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a . . . ." Our Supreme Court has interpreted this language generally to "[provide] the trial court with continuing jurisdiction to modify alimony and support orders" after the date of a final judgment of dissolution. *Amodio* v. *Amodio*, 247 Conn. 724, 729, 724 A.2d 1084 (1999); see also *Callahan* v. *Callahan*, 192 Conn. App. 634, 645, 218 A.3d 655 (observing that § 46b-86 (a) permits modification of support order *or* alimony after date of dissolution judgment), cert. denied, 333 Conn. 939, 218 A.3d 1050 (2019).

"Even though an unallocated order incorporates alimony and child support without delineating specific amounts for each component, the unallocated order . . . necessarily includes a portion attributable to child support in an amount sufficient to satisfy the guidelines." *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 558, 46 A.3d 112 (2012). In *Tomlinson*, the unallocated child support and alimony order was nonmodifiable in amount and term of payments. Id., 543. Nevertheless, our Supreme Court ruled that such an order would be modifiable if a change in custody occurred because General Statutes § 46b-224 permits a modification of child support when a change of custody occurs, despite the provisions in § 46b-86 prohibiting the modification of nonmodifiable orders. Id., 549–50. The court then concluded that, to decide a motion to modify on the basis of an order of unallocated child support and alimony, the trial court must determine what part of the original decree constituted modifiable child support and what part constituted alimony. Id., 558.

*Malpeso* v. *Malpeso*, 165 Conn. App. 151, 165–66, 138 A.3d 1069 (2016), similarly supports the previously stated requirement for modification of unallocated orders in postdissolution matters. In *Malpeso*, this court stated: "In cases such as this one, where the parties incorporate the child support into an unallocated alimony and child support order that limits the modification of the alimony pursuant to an agreement, modification requires additional considerations. Because an unallocated order incorporates alimony and child support without delineating specific amounts for each component, the unallocated order, along with other financial orders, necessarily includes a portion attributable to child support in an amount sufficient to satisfy the guidelines. . . . Thus, to decide a motion to modify in

this situation, a trial court must determine what part of the original decree constituted modifiable child support and what part constituted nonmodifiable alimony." Id. (Citation omitted; internal quotation marks omitted.)[9]

Further, as our Supreme Court has explained, "[g]iven that [t]he original decree [of dissolution] . . . is an adjudication by the trial court as to what is right and proper *at the time it is entered* . . . the trial court must first determine what portion of the unallocated order represented the child support component at the time of the dissolution. Additionally, because questions involving modification of alimony and support depend . . . on conditions as they exist *at the time of the hearing* . . . it is necessary to evaluate the parties' present circumstances in light of the passage of time since the trial court's original calculation." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 558.

In unbundling an unallocated order, the court "will also need to ascertain the intent of the parties." *Malpeso* v. *Malpeso*, supra, 165 Conn. 171; see also *Brent* v. *Lebowitz*, 67 Conn. App. 527, 532, 787 A.2d 621 (court must determine what was intended to be child support within unallocated alimony and child support order to ensure agreement did not run afoul of guidelines), cert. granted on other grounds, 260 Conn. 902, 793 A.2d 1087 (2002) (appeal withdrawn April 25, 2002).

Finally, "[i]n modifying the [unallocated child] support [and alimony] order in a subsequent proceeding, a trial court may consider the same factors applied in the initial determination to assess any changes in the parties' circumstances since the last court order. . . . [General Statutes §] 46b-215b (c) mandates that the guidelines shall be considered in addition to and not in lieu of the criteria for such awards established in [General Statutes §§] 46b-84 [and] 46b-86 . . . . Specifically, § 46b-84 (d) stipulates that the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child." (Citation omitted; footnote omitted; internal quotation marks omitted). *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 559.

We next turn to the relevant law regarding the defendant's assertion that, in failing to determine what portion of the unallocated order was child support, the court failed to consider and apply the child support guidelines. Section 46b-215b (a) provides in relevant part that the child support and arrearage guidelines "shall be considered in *all* determinations of child support award amounts, including any current support, health care coverage, child care contribution and past-

due support amounts, and payment on arrearages and past-due support within the state. In all such determinations, there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount to be ordered. A specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case, as determined under the deviation criteria established by the Commission for Child Support Guidelines under section 46b-215a, shall be required in order to rebut the presumption in such case." (Emphasis added.)

"The finding *must* include a statement of the presumptive support amount and explain how application of the deviation criteria justifies the variance. . . . This court has stated that the reason why a trial court must make an on-the-record finding of the presumptive support amount before applying the deviation criteria is to facilitate appellate review in those cases in which the trial court finds that a deviation is justified. . . . In other words, the finding will enable an appellate court to compare the ultimate order with the guideline amount and make a more informed decision on a claim that the amount of the deviation, rather than the fact of a deviation, constituted an abuse of discretion." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Kiniry* v. *Kiniry*, 299 Conn. 308, 319–20, 9 A.3d 708 (2010); see also *Misthopoulos* v. *Misthopoulos*, 297 Conn. 358, 367–70, 999 A.2d 721 (2010); *Maturo* v. *Maturo*, 296 Conn. 80, 91, 995 A.2d 1 (2010); *Unkelbach* v. *McNary*, 244 Conn. 350, 367–68, 710 A.2d 717 (1998); *Favrow* v. *Vargas*, 231 Conn. 1, 29, 647 A.2d 731 (1994); *O'Brien* v. *O'Brien*, 138 Conn. App. 544, 555, 53 A.3d 1039 (2012), cert. denied, 308 Conn. 937, 66 A.3d 500 (2013); *Budrawich* v. *Budrawich*, 132 Conn. App. 291, 299–300, 32 A.3d 328 (2011).

"In any marital dissolution action involving minor children, it is axiomatic that the court must fashion orders providing for the support of those children. There is no exception to this mandate, and certainly none for unallocated awards of alimony and child support, which necessarily include amounts for both child support and spousal support. *O'Brien* v. *O'Brien*, supra, 138 Conn. App. 553. Moreover, a trial court is "required to make its child support award in accordance with the applicable statutes and guidelines, and any deviation from the guidelines must be accompanied by a specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case. The fact that the defendant may have requested unallocated alimony and support does not alter the obligations of the trial court in making its award of child support . . . ." *Tuckman* v. *Tuckman*, 308 Conn. 194, 208, 208, 61 A.3d 449 (2013).

"When a court unbundles child support from an unal-

located alimony and child support order, the guidelines continue to provide guidance. . . . Even in cases of high income parents, adherence to principles of the guidelines is mandatory. See *O'Brien* v. *O'Brien*, [supra, 138 Conn. App. 551] ('[o]ur Supreme Court [has] emphasized the importance of the mandatory application of the guidelines to *all* cases involving minor children, including those cases involving families with high incomes' . . .) . . . see also General Statutes § 46b-215b (a) (guidelines 'shall be considered in *all* determinations of child support award amounts' . . .)." (Citation omitted; emphasis in original; footnote omitted.). *Malpeso* v. *Malpeso*, supra, 165 Conn. App. 166.

We now turn to the facts of this case. In assessing the defendant's motion for modification, the court found a substantial change in circumstances in that, since the dissolution and original orders, two of the parties' children had reached the age of majority. This finding as to a substantial change in circumstances gave the court the authority, pursuant to § 46b-86, to modify the unallocated alimony and child support order. See *Malpeso* v. *Malpeso*, 140 Conn. App. 783, 786, 60 A.3d 380 (2013) ("§ 46b-86 (a) . . . permits the court to modify alimony and child support orders if the circumstances demonstrate that: (1) either of the parties' circumstances have substantially changed; or (2) the final order of child support substantially deviates from the child support guidelines" (internal quotation marks omitted)).

However, pursuant to *Tomlinson*, after determining that a substantial change in circumstances existed, the court was then required to determine what portion of the unallocated order, as revised in 2016, constituted child support and what portion constituted alimony. See *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 558. The court, however, did not take the necessary steps to unbundle the 2013 child support and alimony orders relative to the change in the orders that became effective on September 16, 2016.[10] Rather, the court, without any reference to, let alone application of, the child support guidelines, merely reduced the unallocated order based on the defendant's gross base cash salary to be paid by him to the plaintiff by 2.5 percent. It did not provide any rationale for the amount of its stated reduction. Furthermore, the court, despite the fact that the dissolution order also required the defendant to pay 25 percent of his gross cash bonus to the plaintiff as unallocated alimony and child support, made no reduction in that obligation at all, without explanation.[11]

Despite *Tomlinson* and other subsequent case law, the court's order failed to apply the child support guidelines in determining what portion of the 2013 unallocated order that went into effect on September 16, 2016, constituted the presumptive amount of child support for the two children who, at that time, were minors. Moreover, having failed to determine the presumptive

amount of child support under the guidelines, the court was not in a position to, and did not, make a finding as to whether the dissolution court in 2013 determined that application of the guidelines in 2013 would have been inappropriate in this case, thereby justifying a possible deviation therefrom. In particular, the court did not determine how much of the unallocated order the parties intended to constitute child support. Whether based on the guidelines or a deviation therefrom, the amount of child support intended at the time of dissolution to be payable in 2016 from both the defendant's gross salary and gross bonus income should have been subtracted from the total amount of the unallocated 2016 award, and the remaining sum should have constituted the alimony award that became effective on September 16, 2016. Furthermore, in modifying the order, the court did not provide a mathematical explanation for the reduction made on the basis of the fact that, since the time of the original order, two of the parties' children had reached the age of majority.

The court also stated ambiguously that its modification "addressed" the youngest child's attaining the age of eighteen, but it made its order retroactive to December 6, 2018, a date when the youngest child was still a minor. This, too, was improper. Having determined that there was a substantial change in circumstances, the court was required to undertake the necessary statutory analysis, which included unbundling the unallocated order. Simply stating, without explanation, that the modification took into account that the youngest child would soon turn eighteen is not sufficient.

The court's failure to apply the child support guidelines in crafting its modified order was not due to a lack of necessary information provided by the parties. Specifically, both the plaintiff and the defendant provided the court with financial affidavits evidencing their current net weekly incomes,[12] as well as child support guidelines worksheets evidencing the presumptive support amount payable by the defendant to the plaintiff.[13] The defendant also introduced evidence of his net income, both as to cash salary and bonus income, and the court also had before it the parties' financial affidavits at the time of the dissolution in 2013, the date of the previous unallocated child support and alimony order. Moreover, the court also had on file a child support guidelines worksheet that was submitted on September 4, 2013, the date of the dissolution. In the unbundling analysis, and pursuant to the child support guidelines in effect at the time of the court's order, the court was required to apply the guidelines in determining the presumptive amount of any supplemental order based on the defendant's bonus income. See *Maturo* v. *Maturo*, supra, 296 Conn. 96–99 (applying 2005 child support guidelines); see also Regs., Conn. State Agencies § 46b-215a-1 (11) (A) (iii) (including in gross income "commissions, bonuses and tips"). Despite hav-

ing this information before it, the court failed to make a finding as to the presumptive child support amount payable by the defendant to the plaintiff, for September 16, 2016, or December 6, 2018, the effective date of the modification, and, if necessary, a finding as to whether, on the basis of the child support guidelines, those amounts were inequitable or inappropriate and a deviation from the guidelines was appropriate.

For the foregoing reasons, we conclude that the court erred in modifying the unallocated alimony and child support award without unbundling the child support award from the alimony award, and, further, erred in failing to consider and to apply the child support guidelines or the principles espoused therein.

The court's failure to unbundle the child support and alimony awards from the unallocated order and failure to apply the child support guidelines requires reversal and a remand for further proceedings. On remand, the court should conduct a hearing to determine, on the basis of evidence presented by the parties, what portion of the award should be applied to child support and what portion should be applied to alimony. In doing so, the court should apply the child support guidelines as they existed in 2013 at the time of the original award to the 2016 award, as modified by the terms of the parties' separation agreement. Specifically, the court must ascertain the intent of the parties with respect to what portion of the unallocated alimony and child support order was intended for child support. See *Malpeso* v. *Malpeso*, supra, 165 Conn. App. 171. The determined amount constituting child support should then be subtracted from the 2016 unallocated award to determine the alimony award in 2016. Then, on the basis of the change in circumstances, the court should determine whether the alimony portion of the unallocated award in 2016 should be modified. See *Gabriel* v. *Gabriel*, 324 Conn. 324, 340, 152 A.3d 1230 (2016). As we have explained previously in this opinion, this determination must be made on the basis of the parties' intent at the time of the dissolution. See *Malpeso* v. *Malpeso*, supra, 165–66.

The court also must determine, applying the child support guidelines, the appropriate amount of child support for the youngest child due and payable from the effective date of the modification to the date that child attained the age of eighteen, or the date she graduated from high school, whichever was later. Whether that amount and the amount of alimony arrived at after considering the defendant's motion for modification should be combined as a new unallocated order of alimony and child support for this time period, or separated into separate child support and alimony awards also will have to be decided. Ultimately, however, there should be a provision for only an alimony order to be in effect the day after the child support obligation for

the youngest child terminated.

## II

Finally, the defendant claims that the court abused its discretion by ordering him to pay $27,500 of the plaintiff's attorney's fees. The defendant argues, in broad terms, that the court abused its discretion because the undisputed evidence presented at the hearing demonstrated that the plaintiff was capable of paying her attorney's fees and, in fact, had paid all but $82.42 of the fees charged to her.[14] For the reasons that follow, in light of our conclusion in part I of this opinion that the case must be remanded for further proceedings, we conclude that the issue of attorney's fees should be revisited by the court on remand. Accordingly, we do not reach the merits of this claim.

As this court has observed, "[i]ndividual financial orders in a dissolution action are part of the carefully crafted mosaic that comprises the entire asset reallocation plan. . . . Under the mosaic doctrine, financial orders should not be viewed as a collection of single disconnected occurrences, but rather as a seamless collection of interdependent elements. Consistent with that approach, our courts have utilized the mosaic doctrine as a remedial device that allows reviewing courts to remand cases for reconsideration of all financial orders even though the review process might reveal a flaw only in the alimony, property distribution or child support awards." (Internal quotation marks omitted.) *Barcelo* v. *Barcelo*, 158 Conn. App. 201, 226, 118 A.3d 657, cert. denied, 319 Conn. 910, 123 A.3d 882 (2015).

We observe that an award of attorney's fees issued in connection with a postjudgment motion to modify, rather than at the time of the other financial orders that were issued at the date of the dissolution, is "not part of the mosaic of final financial orders by which the court initially attempted to chart the parties' financial future." *O'Brien* v. *O'Brien*, supra, 138 Conn. App. 555. The award of the attorney's fees at issue in the present claim pertains only to the defense of the requested modification of a single, unallocated alimony and support order. Although the award is not part of the mosaic of financial orders, an analysis of the award nonetheless is necessarily intertwined with the court's modified financial orders. An analysis of whether the court abused its discretion in awarding attorney's fees is dependent on the parties' financial circumstances, *as affected by the court's modified financial orders*, at the time that the request for attorney's fees was considered by the court; see id.; as well as a consideration of the factors enumerated in § 46b-82, the alimony statute.[15] Because we have determined that the alimony and child support awards must be reconsidered on remand, so too must the award of attorney's fees in light of the possibility that, as compared with the financial orders that are the subject of the present appeal, the

court will issue different financial orders on remand in this case.

Accordingly, because the court's modification order will be reconsidered in its entirety on remand, its award to the plaintiff of $27,500 in attorney's fees must also be remanded for reconsideration in light of the newly calculated child support and alimony awards that will be issued at that time.

The judgment is reversed with respect to the court's postdissolution orders modifying the unallocated alimony and child support order and awarding the plaintiff attorney's fees, and the case is remanded for further proceedings consistent with this opinion.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] This is a scrivener's error because it is undisputed that only two of the parties' minor children reached the age of majority since the entry of the dissolution judgment in 2013. In their appellate briefs, both parties acknowledge this error.

[2] The plaintiff also filed a postjudgment motion for contempt on February 26, 2018, and an amended postjudgment motion for contempt on April 1, 2019. The court denied both motions on April 29, 2019. The court's rulings on the aforementioned motions are not relevant to this appeal.

[3] These worksheets did not address the presumptive amount of supplemental child support that would be applicable to the defendant's bonus income under the child support guidelines.

[4] The dissolution court did not issue an educational support order or reserve jurisdiction to do so in accordance with General Statutes § 46b-56c because the parties explicitly waived their right to request a postmajority educational support order.

[5] The dissolution court incorporated the parties' separation agreement into the judgment of dissolution and made its provisions orders of the court.

[6] Section 3.12 of the separation agreement provides as follows: "The [plaintiff] shall be entitled to a safe harbor of $25,000 per year before the [defendant] [may] seek a modification of alimony and support."

[7] Section 46b-62 (a) does not provide for the exception stated in *Maguire*, that a court may award attorney's fees when a failure to do so would undermine the court's other financial orders.

[8] The defendant makes two claims, one related to the court's failure to apply the child support guidelines and another related to the court's failure to unbundle the child support and alimony from the unallocated order. We, however, consider both of these claims together, as they are inherently intertwined.

[9] The present case differs from *Tomlinson and Malpeso* in part because, in the present case, the unallocated child support and alimony award is modifiable. Other cases, however, have applied the same unbundling requirements set forth in *Tomlinson* to the modification of unallocated awards that were not unmodifiable. See, e.g., *Coury* v. *Coury*, 161 Conn. App. 271, 297–98, 128 A.3d 517 (2015); *O'Brien* v. *O'Brien*, 138 Conn. App. 544, 553–54, 53 A.3d 1039 (2012), cert. denied, 308 Conn. 937, 66 A.3d 500 (2013).

[10] Although the order changed effective September 16, 2016, the order was entered in 2013. The court, thus, was required to determine what the court and parties intended in 2013 as to the financial orders that became effective in 2016.

[11] The record reflects that, in 2013, the court found that the terms of the parties' separation agreement were fair and equitable and incorporated those terms into its judgment, but it did not set forth either a presumptive amount under the guidelines or a reason to deviate therefrom. Unfortunately, the court's failure to make these requisite findings at the time that it relied on the parties' agreement and rendered the judgment of dissolution is not uncommon. It is regrettable in the present case, because it makes the analysis that must be undertaken on remand far more cumbersome than it would be if the court, on remand, was aided by these necessary findings.

[12] The plaintiff's net weekly income was $2909, comprised of $23 per week

in wages, $3669 per week of unallocated alimony and child support, and $134 per week as partnership income. The defendant's net weekly income was $7994 per week.

[13] The plaintiff provided the court with a child support guidelines worksheet showing that the presumptive support amount payable by the defendant to the plaintiff was $465 per week. The defendant also provided the court with a child support guidelines worksheet showing that the presumptive support amount payable by the defendant to the plaintiff was $480 per week.

We note that neither party attempted to present to the court the presumptive amount applicable to a supplemental child support award based on the defendant's net bonus income. They should be prepared to provide the court with this information on remand.

[14] The defendant does not claim that the amount of attorney's fees charged, which totaled $42,582.42, was unreasonable.

[15] "[Section] 46b-62 governs the award of attorney's fees in dissolution proceedings and provides that the court may order either spouse . . . to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in [§] 46b-82. These criteria include the length of the marriage, the causes for the . . . dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, [earning capacity] vocational skills, [education] employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to [§] 46b-81 . . . . In making an award of attorney's fees under § 46b-82, [t]he court is not obligated to make express findings on each of [the] statutory criteria. . . . Courts ordinarily award counsel fees in divorce cases so that a party . . . may not be deprived of [his or] her rights because of lack of funds. . . . Where, because of other orders, both parties are financially able to pay their own counsel fees they should be permitted to do so. . . . An exception to th[is] rule . . . is that an award of attorney's fees is justified even where both parties are financially able to pay their own fees if the failure to make an award would undermine its prior financial orders . . . ." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Misthopoulos* v. *Misthopoulos*, supra, 297 Conn. 385–86.