******************************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# FATIMA K. DE ALMEIDA-KENNEDY *v.*
# JAMES KENNEDY
## (AC 43348)

Alvord, Elgo and Alexander, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the judgment of the trial court granting the plaintiff's motion to dismiss the defendant's pending motions, which included a motion for modification of his alimony, child support and visitation orders, two motions for contempt, a motion for an order to prevent the plaintiff from filing additional motions without leave of the court pursuant to *Strobel* v. *Strobel* (92 Conn. App. 662), a motion to remove the guardian ad litem, and a motion to compel compliance with his discovery request, all for lack of subject matter jurisdiction pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (§ 46b-155 et seq.). Prior to the filing of the motion to dismiss, the defendant relocated to Florida and the plaintiff and the parties' children relocated to Tennessee. The defendant returned to Connecticut after approximately one year in Florida. While the plaintiff's motion to dismiss was pending, the defendant filed an application for an emergency ex parte order of custody, and the trial court entered an emergency order awarding temporary custody to the defendant and also ordered a hearing on the custody issue. At the conclusion of the hearing, the trial court ordered that all existing orders regarding the custody of the parties' minor children be stayed until the plaintiff's motion to dismiss was resolved. Following a hearing on the motion to dismiss, for which the plaintiff submitted an affidavit in support of her arguments, as she was unable to attend in person, the trial court dismissed the defendant's motions for a *Strobel* order, to remove the guardian ad litem, and to compel, and one of his motions for contempt. The defendant appealed to this court and then filed a motion to reargue with the trial court. The trial court stayed consideration of the defendant's motion for modification of his alimony, child support and visitation orders, which remained pending, until the defendant's motion to reargue was resolved. The defendant then filed an amended appeal from the stay order. The trial court issued a memorandum of decision on the defendant's motion to reargue in which it, inter alia, vacated the stay and ordered dismissal of the custody proceedings, the defendant's motion for modification, and his second motion for contempt, and the defendant further amended his appeal to challenge that ruling. *Held*:

1. The defendant could not prevail on his claim that the trial court lacked a proper basis on which to grant the plaintiff's motion to dismiss: the substance of the affidavit submitted by the plaintiff, which recited details of her relocation, in addition to other documentation that she provided in connection with her motion to dismiss, including an individual education plan for her son that was prepared by his school in Tennessee and an electrical bill for a residence in Tennessee that listed the plaintiff as the account holder, undermined the defendant's claim that the plaintiff did not introduce any admissible evidence as to her residence, the length of time at her residence, the location of the children, or her financial circumstances.

2. This court declined to review the defendant's claim that the trial court abused its discretion in staying enforcement of the emergency ex parte custody order: the claim was not properly before this court because the defendant failed to file a motion for review of the stay order, which, pursuant to the applicable rule of practice (§ 66-6), was his sole remedy.

3. The trial court properly concluded that, pursuant to the applicable statute (§ 46b-115*l* (a) (1)), it did not have exclusive, continuing jurisdiction over the defendant's motions relating to custody of and visitation with the minor children and, therefore, it properly granted the plaintiff's motion to dismiss those motions: jurisdiction under § 46b-115*l* (a) (1) terminated in April, 2018, when the plaintiff and the minor children relocated to Tennessee following the defendant's relocation to Florida,

as neither the parties nor the minor children continued to reside in Connecticut after that time; moreover, Connecticut did not reacquire exclusive, continuing jurisdiction when the defendant returned to reside in the state, as § 46b-115*l* (a) (1) pertained only to continuing jurisdiction, not interrupted or intermittent jurisdiction.

4. The trial court improperly dismissed certain of the defendant's motions unrelated to the issues of child custody or visitation: the trial court's dismissal order was predicated on its conclusion that it lacked subject matter jurisdiction under the act, however, the act only concerned issues of custody or visitation and was not applicable to orders relating to child support or other monetary obligations; accordingly, although the defendant's two motions for contempt, which concerned custody and visitation with the minor children, and his motion for modification, which sought to modify the existing visitation order, were properly dismissed, the defendant's motion to modify his alimony and child support orders, along with his motions for a *Strobel* order, to remove the guardian ad litem, and to compel compliance with his discovery request, were beyond the purview of the act, as they had no relation to the issues of child custody or visitation, and, consequently, they were improperly dismissed.

5. The trial court did not abuse its discretion in deferring consideration of the defendant's motion to modify his alimony, child support, and visitation orders: the defendant's motion to reargue, which asked the trial court to reconsider and reverse its determination that it lacked subject matter jurisdiction under the act, required the deferral of consideration of the merits of his motion to modify until after the jurisdiction question was fully resolved.

Argued January 7—officially released September 7, 2021

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Gould, J.*, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Egan, J.*, granted the plaintiff's motion to dismiss the defendant's motions for a *Strobel* order, to remove the guardian ad litem, to compel, and for contempt and stayed the custody proceeding that was instituted by the defendant's application for an emergency ex parte order of custody, and the defendant appealed to this court; subsequently, the court, *Stewart, J.*, issued a stay on the defendant's motion to modify, and the defendant amended his appeal; thereafter, the court, *Egan, J.*, granted the defendant's motion to reargue and amended its decision relating to the plaintiff's motion to dismiss and dismissed the custody proceedings and the defendant's motion to modify and for contempt, and the defendant amended his appeal. *Affirmed in part*; *reversed in part*; *further proceedings*.

*James Kennedy*, self-represented, the appellant (defendant).

*J. David Griffin*, for the appellee (plaintiff).

*Opinion*

ELGO, J. In this contentious postdissolution marital dispute,[1] the defendant, James Kennedy,[2] appeals from the judgment of the trial court granting the motion to dismiss filed by the plaintiff, Fatima K. De Almeida-Kennedy, for lack of subject matter jurisdiction pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (act), which has been adopted by Connecticut and codified in General Statutes § 46b-115 et seq. On appeal, the defendant claims that the court (1) lacked a proper basis on which to grant the motion to dismiss, (2) abused its discretion in staying enforcement of an ex parte custody order, (3) improperly concluded that it lacked continuing, exclusive jurisdiction pursuant to General Statutes § 46b-115*l* (a) (1), (4) improperly dismissed several motions unrelated to the issue of child custody or visitation, and (5) abused its discretion in staying consideration of his motion for modification. We affirm in part and reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On August 2, 2010, the trial court dissolved the parties' marriage. The judgment of dissolution incorporated by reference a written separation agreement, which provided, inter alia, that (1) the plaintiff was to have legal custody of the parties' two minor children, (2) the defendant was permitted supervised visits, and (3) the defendant would pay weekly unallocated alimony and child support.[3] On December 9, 2014, that judgment was modified by agreement to provide for, inter alia, a reduction to the defendant's alimony and child support obligations and joint legal custody with primary physical custody remaining with the plaintiff.

On December 28, 2015, the defendant filed a motion for modification requesting, among other things, a further reduction of his alimony and child support obligations. The court, *Wenzel, J.*, declined that request, the propriety of which this court affirmed on appeal. See *De Almeida-Kennedy* v. *Kennedy*, 188 Conn. App. 670, 674–82, 205 A.3d 704, cert. denied, 332 Conn. 909, 210 A.3d 566 (2019). On March 10, 2016, the court, *Adelman, J.*, appointed a guardian ad litem to represent the minor children.

On August 30, 2017, the plaintiff filed a motion for contempt, on which the court, *Wenzel, J.*, scheduled a hearing for November 8, 2017. Prior to that hearing, the defendant moved to Florida in October, 2017.

At the November 8, 2017 hearing on the motion for contempt, the plaintiff's counsel and the guardian ad litem informed the court that the defendant, who was not present at the hearing, had relocated to Florida and had failed to attend a child support enforcement proceeding in Connecticut one day earlier. The court

also heard testimony from the guardian ad litem in support of the plaintiff's motion for contempt. In its oral memorandum of decision, the court concluded that the defendant was in wilful contempt of the separation agreement and, accordingly, suspended the defendant's unsupervised visitation rights.[4] It is undisputed that the defendant has not seen the minor children in person since that judgment was rendered.

In April, 2018, the plaintiff and the minor children relocated to Tennessee. The defendant thereafter filed a series of motions in April and May, 2018, including, inter alia, a motion for modification in which he sought to reduce his unallocated alimony and support obligations and to modify his visitation order.[5] The defendant also filed an application for an emergency ex parte order of custody on May 8, 2018, which the court denied.

On November 7, 2018, the plaintiff, appearing at that time in a self-represented capacity, filed a motion to dismiss the defendant's pending motions for lack of jurisdiction under the act. In that motion, the plaintiff asked the court to "terminate jurisdiction" for various reasons, most notably the fact that she had resided in Tennessee with the minor children for more than six months.[6] While that motion to dismiss was pending, the defendant filed another application for an emergency ex parte order of custody on November 27, 2018. That same day, the court, *Gould, J.*, entered an emergency order awarding temporary custody to the defendant. The court also ordered a hearing to be held on the custody issue within fourteen days.

On December 11, 2018, the court held such a hearing at which the plaintiff's counsel, the defendant, and the guardian ad litem were present. At that time, the guardian ad litem apprised the court that the defendant's November 27, 2018 application for an emergency ex parte order of custody "contain[ed] misleading, incorrect, incomplete, as well as false statements." At the conclusion of that hearing, the court, *Hon. Robert J. Malone*, judge trial referee, ordered all existing orders regarding the custody of the minor children to be stayed until the plaintiff's motion to dismiss for lack of subject matter jurisdiction was resolved.

On May 1, 2019, the court held a hearing on the plaintiff's motion to dismiss. The defendant appeared at that hearing and was heard by the court. Although the plaintiff was unable to travel to Connecticut for the hearing, she submitted an affidavit in support of her motion to dismiss.

In its August 29, 2019 memorandum of decision, the court, *Egan, J.*, stated in relevant part: "In support of her motion [to dismiss], the plaintiff claims that she and the parties' minor children had lived in Franklin, Tennessee for at least seven months as of November 7, 2018, when the ex parte application was filed. She

further claims that as of October, 2018, the defendant had lived one year in Satellite Beach, Florida after leaving Connecticut. She claims the defendant returned to Connecticut as of October 8, 2018; however, as of that date, both parties had both been living out of . . . Connecticut for over six months and the defendant had been living out of state for a full year.

"The plaintiff further submits that she is the primary emotional, physical and financial caregiver for the children, and they have continued to reside in Tennessee since their move in [April, 2018]. The children [have been] enrolled in Williamson County Schools in Tennessee since April 22, 2018. Individual Education Plans . . . were established for them on May 7, 2018. All other aspects of their care have been transferred to Tennessee.

"The plaintiff further argues that with respect to the [Connecticut] child support order, on September 14, 2018, the Family Support Magistrate dismissed the child support case because the order was enforced in Florida. The plaintiff emphasized that while she is working in Tennessee, she has modest means. Travel to Connecticut to address motions would require her to secure childcare for the children at a steep cost to her, take the children out of school to travel with her, or find [someone to care for] them while she is away.[7] She does not have the means to afford an attorney.

"The defendant testified that he resides in Connecticut. He returned in October, 2018, from Florida. He argues that the plaintiff has gaps in her Tennessee residency and that she gave inconsistent dates of residency. Further, she admits to travel out of state.

"With respect to his relationship with the children, the defendant argues that he tried to have access to them, but he was unsuccessful due to the plaintiff's actions. The defendant testified that he has no information on the care and relationship of the children.

"With respect to the ties of the minor children to Connecticut, the defendant argues that he has family here. The children have lifelong relationships here. They were only pulled out of school in March, 2018. They had medical providers in March, 2018. They would be able to receive an education and medical treatment no different than they would have in 2018. . . . At the time of the [plaintiff's November 7, 2018 motion to dismiss for lack of jurisdiction], the plaintiff and the minor children had lived in Tennessee for seven months. The defendant resided in Florida for over one year." (Footnote added.)

The court continued: "Based upon the evidence introduced and the representations of the plaintiff's counsel, the court finds that all parties no longer lived in [Connecticut] at the time of the filing of the motion to dismiss on November 7, 2018."[8] The court then concluded that

"Connecticut does not have exclusive, continuing jurisdiction" under § 46b-115*l* (a) (1).[9] In addition, the court expressly declined to exercise jurisdiction over the present dispute pursuant to General Statutes § 46b-115q, finding that "Connecticut is an inconvenient forum" and that "Tennessee is a more appropriate forum" to resolve the child custody dispute between the parties.[10] Accordingly, the court dismissed four of the defendant's pending motions.[11] In addition, the court ordered the custody proceeding that was instituted by the defendant's application for an emergency ex parte order of custody to be "stayed upon the condition that a child custody proceeding be promptly commenced in Tennessee."[12]

On September 3, 2019, the defendant filed an appeal of the court's August 29, 2019 judgment with this court. He then filed a motion to reargue with the trial court. At that time, the defendant's April 4, 2018 motion for modification of his alimony, child support, and visitation orders remained pending. On December 12, 2019, the court, *Stewart, J.*, stayed consideration of that motion to modify until the defendant's motion to reargue was resolved. On December 31, 2019, the defendant filed an amended appeal from that stay order.

On July 9, 2020, the court issued its memorandum of decision on the defendant's motion to reargue. The court first concluded it lacked both exclusive, continuing jurisdiction pursuant to § 46b-115*l* and initial child custody jurisdiction pursuant to General Statutes § 46b-115k. In light of that determination, the court abandoned its earlier ruling, in which it had declined to exercise its jurisdiction on the basis of an inconvenient forum pursuant to § 46b-115q.[13] As the court stated: "[T]he statutory requirements necessary for the court to assume . . . jurisdiction over the custody issues [have] not been established pursuant to . . . [§§] 46b-115k and . . . 46b-115*l*. Therefore, based upon the court's further review of the record, the memorandum of decision dated August 29, 2019, shall be amended to vacate the stay on the basis of inconvenient forum." The court also amended its prior ruling to order the dismissal of "the custody proceedings." In addition, the court entered an order dismissing two additional pending motions filed by the defendant—his April 4, 2018 motion for modification and his April 4, 2018 motion for contempt. On July 29, 2020, the defendant further amended his appeal to challenge the trial court's July 9, 2020 ruling on his motion to reargue, and this appeal followed.[14]

I

On appeal, the defendant claims that the court lacked a proper basis on which to grant the motion to dismiss filed by the plaintiff. More specifically, he claims that the plaintiff "did not introduce any admissible evidence as to her residence, the length of time at the residence,

the location of the children, nor [her] financial circumstances." On our plenary review of the record before us; see *Mendillo* v. *Tinley, Renehan & Dost, LLP*, 329 Conn. 515, 523, 187 A.3d 1154 (2018); *GMAC Mortgage, LLC* v. *Ford*, 144 Conn. App. 165, 174, 73 A.3d 742 (2013); we disagree.

The following additional facts are relevant to the defendant's claim. On January 10, 2019, the plaintiff filed a memorandum of law in support of her motion to dismiss, which was accompanied by multiple exhibits, including a copy of the individual educational program for her minor son prepared by Williamson County Schools in Franklin, Tennessee for the period beginning May 7, 2018, and an electrical bill dated June 5, 2018, that lists the plaintiff as the account holder for a "service address" located in Franklin, Tennessee. In addition, the plaintiff submitted an affidavit that recited certain details regarding her relocation to Tennessee. At the May 1, 2019 hearing on the motion to dismiss, the following colloquy occurred regarding that affidavit:

"The Court: Well, under the Practice Book the motion to dismiss requires the motion, a memorandum of law and an affidavit may—may be submitted to, I think, fill in the record—

"[The Plaintiff's Counsel]: I—I did submit an—

"The Court: —with the facts.

"[The Plaintiff's Counsel]: —affidavit.

"The Court: You did."[15]

At that time, the defendant did not dispute the existence of that affidavit. Moreover, in its August 29, 2019 memorandum of decision, the court specifically found that the plaintiff had filed an affidavit in support of her motion to dismiss.

In his subsequent motion to reargue, the defendant nevertheless claimed that the plaintiff never "supplied an affidavit" to the court. In addressing that claim, the court stated in its July 9, 2020 memorandum of decision on the motion to reargue that, during a December 4, 2019 hearing on that motion, the plaintiff's counsel "represented that she filed the plaintiff's sworn affidavit dated May 1, 2019, on the day of the hearing." The court then noted that it was "unable to locate the sworn affidavit. Counsel filed a second sworn affidavit from the plaintiff on the day of the hearing on December 4, 2019, to replace the missing affidavit. Given the volume of pleadings in the case and the potential of an administrative error, the court accepted counsel's representation regarding filing, accepted the substitute sworn affidavit, and considers counsel's statements [at the May 1, 2019 hearing] to be argument."[16]

In that affidavit, the plaintiff averred, inter alia, that "[o]n or around October, 2017, the defendant moved to Florida"; that "[i]n April, 2018, as a result of financial

hardship and to be closer to family, I relocated myself and both minor children to Franklin, Tennessee"; that "[a]t the time I relocated, the defendant still resided in Florida"; that "[t]he defendant currently owes more than $107,000 in back child support, according to Connecticut Child Support Enforcement"; that the minor children "are enrolled in the Williamson County School System in Franklin, Tennessee," where they were "thriving academically and emotionally"; that "[d]ue to financial hardship, I enrolled our family in public benefits"; that "[o]n or about March 20, 2019, Tennessee began a child support action against the defendant"; and that, "[a]s of May 1, 2019, I have continuously resided in Tennessee, with our children, for more than one year."

The substance of that affidavit, along with other documentation provided in connection with the motion to dismiss, undermines the defendant's claim that the plaintiff failed to produce "any admissible evidence as to her residence, the length of time at the residence, the location of the children, nor [her] financial circumstances." We therefore reject that claim.

## II

The defendant next contends that the court abused its discretion in staying enforcement of the emergency ex parte custody order. That claim is not properly before us.[17]

As this court has explained, "[p]ursuant to Practice Book § 61-14, [t]he sole remedy of any party desiring the court to review an order concerning a stay of execution shall be by motion for review under [Practice Book §] 66-6. . . . Issues regarding a stay of execution cannot be raised on direct appeal. . . . Practice Book § 66-6 requires that [m]otions for review . . . be filed within ten days from the issuance of notice of the order sought to be reviewed. . . . If a party does not file a motion for review, that party is precluded from challenging the court's stay order by means of a direct appeal. . . . We therefore decline to review this claim because it has been improperly presented for resolution on appeal." (Citations omitted; internal quotation marks omitted.) *Clark* v. *Clark*, 150 Conn. App. 551, 575–76, 91 A.3d 944 (2014). Because the defendant failed to file a motion for review of the stay order in question, we decline to review his claim.

## III

The defendant also claims that the court improperly concluded that it did not have exclusive, continuing jurisdiction pursuant to § 46b-115*l* (a) (1). We disagree.

"At the outset, we note our well settled standard of review for jurisdictional matters. A determination regarding a trial court's subject matter jurisdiction is a question of law. When . . . the trial court draws conclusions of law, our review is plenary and we must decide whether its conclusions are legally and logically

correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Igersheim* v. *Bezrutczyk*, 197 Conn. App. 412, 416, 231 A.3d 1276 (2020).

"The purposes of the [act] are to avoid jurisdictional competition and conflict with courts of other states in matters of child custody; [to] promote cooperation with the courts of other states; [to] discourage continuing controversies over child custody; [to] deter abductions; [to] avoid [relitigation] of custody decisions; and to facilitate the enforcement of custody decrees of other states. . . . The [act] addresses [interjurisdictional] issues related to child custody and visitation. . . . The [act] is the enabling legislation for the court's jurisdiction." (Internal quotation marks omitted.) *Parisi* v. *Niblett*, 199 Conn. App. 761, 770, 238 A.3d 740 (2020).

The salient provision of the act is codified in Connecticut in § 46b-115*l* (a) (1), which provides in relevant part: "[A] court of this state which has made a child custody determination pursuant to sections 46b-115k to 46b-115m, inclusive, has exclusive, continuing jurisdiction over the determination until . . . [a] court of this state or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this state . . . ." In the present case, the court found that the defendant left Connecticut and relocated to Florida in October, 2017, while the plaintiff and the minor children relocated to Tennessee in April, 2018. The court further found, and the defendant does not dispute, that he did not return to Connecticut until the end of September, 2018. Thus, from April to September, 2018, neither the plaintiff, the defendant, nor the minor children "presently reside[d] in this state,"[18] a prerequisite to exclusive, continuing jurisdiction under § 46b-115*l* (a) (1). As the commentary to the act notes, "when the child, the parents, and all persons acting as parents physically leave the [s]tate to live elsewhere, the exclusive, continuing jurisdiction ceases." Unif. Child Custody Jurisdiction and Enforcement Act (1997) § 202, comment (2), 9 U.L.A. (Pt. IA) 674 (2019); see also *N.S.* v. *D.M.*, 21 Cal. App. 5th 1040, 1048, 231 Cal. Rptr. 3d 67 (2018) ("[o]nce a state makes an initial child custody determination . . . it retains exclusive continuing jurisdiction over custody matters until . . . all parties move outside the state" (citation omitted)); *Wahlke* v. *Pierce*, 392 S.W.3d 426, 431 (Ky. App. 2013) ("the relocation of both parents and the child out of this [c]ommonwealth before commencement of the modification proceeding divested the family court of exclusive, continuing jurisdiction"); *Hogan* v. *Hogan*, 308 Neb. 397, 403, 954 N.W.2d 868 (2021) ("Nebraska no longer possessed exclusive, continuing jurisdiction. This is because when the children and the parents have moved away from the issuing state, the issuing state no longer meets the jurisdictional prerequisites . . . ."); *Kar* v. *Kar*, 132

Nev. 636, 639, 378 P.3d 1204 (2016) ("[o]nce it determined that the child and the child's parents no longer resided in Nevada, the district court lost *exclusive, continuing* jurisdiction" (emphasis in original)); *T.D.* v. *M.H.*, 219 A.3d 1190, 1197 (Pa. Super. 2019) ("a court lacks exclusive, continuing jurisdiction if all parties move out of the [c]ommonwealth" (internal quotation marks omitted)).

The defendant nonetheless submits that the courts of this state reacquired "exclusive, continuing jurisdiction" on his return to Connecticut in September, 2018. He has provided no legal authority to support that novel contention. By its plain language, § 46b-115*l* pertains to the *continuing* jurisdiction of a Connecticut court, not the interrupted or intermittent jurisdiction. The defendant's claim also is contrary to the stated intent of the drafters of the act, who explained: "The phrase 'do not presently reside' is not used in the sense of a technical domicile. The fact that the original determination [s]tate still considers one parent a domiciliary does not prevent it from losing exclusive, continuing jurisdiction after the child, the parents, and all persons acting as parents have moved from the [s]tate.

* * *

*Exclusive, continuing jurisdiction is not reestablished if, after the child, the parents, and all persons acting as parents leave the [s]tate, the [noncustodial] parent returns.*" (Emphasis added.) Unif. Child Custody Jurisdiction and Enforcement Act (1997) § 202, comment (2), supra, 9 U.L.A. (Pt. IA) 674–75; accord *In re M.R.F.-C.*, 158 N.E.3d 688, 695, 697 (Ohio App. 2020) (affirming trial court's conclusion that it lacked exclusive, continuing jurisdiction when "Ohio was the children's 'home state' when the initial custody proceedings occurred . . . [but] was no longer the children's home state due to the family's relocation to Michigan" and concluding that "[m]other did not satisfy Ohio's residency requirement when she attempted to reestablish residence in Ohio shortly before filing her motion"); cf. *In re Marriage of Ruth*, 32 Kan. App. 2d 416, 421–22, 83 P.3d 1248 (2004) (concluding that Kansas trial court retained exclusive, continuing jurisdiction despite fact that mother and children moved to another state because father "has *continuously* resided in Kansas since the [parties'] divorce" (emphasis added)).

In light of the foregoing, we conclude that the trial court properly determined that it did not have exclusive, continuing jurisdiction over the defendant's November 27, 2018 motion for custody and his other motions related to custody and visitation with the minor children.[19] The court, therefore, properly granted the plaintiff's motion to dismiss those motions.

IV

We next address the defendant's claim that the court,

in ruling on the plaintiff's motion to dismiss and his motion to reargue, improperly dismissed certain motions unrelated to the issue of child custody or visitation. We agree.

The court's dismissal order was predicated on its conclusion that it lacked subject matter jurisdiction under the act. The act is "the enabling legislation for the court's jurisdiction." (Internal quotation marks omitted.) *Parisi* v. *Niblett*, supra, 199 Conn. App. 770. The act, however, is limited in scope—it concerns issues of custody or visitation. Sections 46b-115k and 46b-115*l*, on which the court's decision here was predicated, expressly grant the trial court jurisdiction over "child custody determination[s]."[20] Like the act, Connecticut law defines " '[c]hild custody determination' " as "a judgment, decree, or other order of a court providing for the legal custody, physical custody or visitation with respect to a child. The term includes a permanent, temporary, initial and modification order. *The term does not include an order relating to child support or other monetary obligation of an individual . . . .*"[21] (Emphasis added.) General Statutes § 46b-115a (3); see also Unif. Child Custody Jurisdiction and Enforcement Act (1997) § 102 (3), supra, 9 U.L.A. (Pt. IA) 658.

The critical question, then, is whether the motions dismissed by the court fall within the purview of " '[c]hild custody determination[s],' " as defined by § 46b-115a (3). The two motions for contempt filed by the defendant on April 4 and May 14, 2018, both concerned custody and visitation with the minor children and, thus, properly were dismissed by the trial court. The court likewise properly dismissed that portion of the defendant's April 4, 2018 motion for modification that sought to modify the existing visitation order.

At the same time, the defendant's April 4, 2018 motion to modify the unallocated alimony and child support order plainly is beyond the purview of the act, as that order relates to the defendant's monetary obligations. See General Statutes § 46b-115a (3). As this court has observed, a "motion for modification concerning child support is not governed by the [act]. Financial orders, such as child support, are not governed by the [act]." *Parisi* v. *Niblett*, supra, 199 Conn. App. 771 n.9. The defendant's May 3, 2018 motion for a *Strobel* order, his May 3, 2018 motion to remove the guardian ad litem, and his May 3, 2018 motion to compel compliance with his discovery request also have no relation whatsoever to the issue of child custody or visitation. For that reason, the court improperly dismissed those motions for lack of jurisdiction under the act.

V

As a final matter, the defendant claims that the court abused its discretion in deferring consideration of his April 4, 2018 motion to modify his alimony, child sup-

port, and visitation orders. We disagree.

As our Supreme Court has explained, "[i]t is axiomatic that once the issue of subject matter jurisdiction is raised, it must be immediately acted upon by the court. . . . [A]s soon as the jurisdiction of the court to decide an issue is called into question, all other action in the case must come to a halt until such a determination is made." (Citations omitted.) *Gurliacci* v. *Mayer*, 218 Conn. 531, 545, 590 A.2d 914 (1991). In the present case, the court's December 12, 2019 decision to defer consideration of the defendant's motion for modification expressly was predicated on the pendency of the defendant's motion to reargue, in which he asked the court to reconsider and reverse its determination that it lacked subject matter jurisdiction under the act. Given those circumstances, we cannot conclude that the court abused its discretion. To the contrary, the court properly deferred consideration of the merits of the defendant's motion to modify until after the jurisdictional question fully was resolved.

### VI

In sum, we conclude that the court properly dismissed the defendant's November 27, 2018 motion for custody, his April 4, 2018 motion to modify the visitation order, and his April 4 and May 14, 2018 motions for contempt for lack of subject matter jurisdiction under the act. We further conclude that, because they do not relate to " '[c]hild custody determination[s],' " as that term is defined by the act, the court improperly dismissed the defendant's April 4, 2018 motion to modify his alimony and support obligations, his May 3, 2018 motion for a *Strobel* order, his May 3, 2018 motion to remove the guardian ad litem, and his May 3, 2018 motion to compel compliance with his discovery request. Because the substance of those motions is beyond the purview of the act, the court improperly concluded that it lacked jurisdiction over those pleadings.

The judgment is reversed with respect to the defendant's April 4, 2018 motion to modify the unallocated alimony and child support order, his May 3, 2018 motion for a *Strobel* order, his May 3, 2018 motion to remove the guardian ad litem, and his May 3, 2018 motion to compel compliance, and the case is remanded for further proceedings according to law; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] A review of the docket reveals approximately 350 postjudgment pleadings by the parties since 2010.

[2] The defendant is licensed to practice law in this state, as he indicated on his appeal form.

[3] "[A]n unallocated order incorporates alimony and child support without delineating specific amounts for each component . . . ." *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 558, 46 A.3d 112 (2012).

[4] At the conclusion of the hearing, the court stated in relevant part: "[T]he court has had these parties before it on numerous occasions. Even in the

past four months, we've had repeated hearings, repeated motions and cross motions, and it's becoming increasingly clear to the court that there are tremendous communication problems between the parties and that these problems are increasingly . . . impacting the welfare of the children.

"The factual basis set out in the motion for contempt is consistent with all of the evidence that had been submitted to the court previously. It appears to be supported by the investigation of our court-appointed guardian ad litem, including her home visit with the children.

"Normally, the court would be reluctant to proceed on a motion of this kind in the absence of one of the parties. It does appear that [the defendant] had notice and there is no evidence before the court to indicate that his absence from the court today was anything other than entirely voluntary and calculated.

"I do note for the record that when he was last before the court and pursuant to the agreement . . . [on September 21, 2017], I specifically indicated to [the defendant], as well as the plaintiff, that pending motions would be heard at the future scheduled hearing date with regard to all other pending motions. And this was about four weeks after the plaintiff had filed her motion for contempt, which is the subject of today's hearing. I believe that the immediate best interests of the children require the court to address the problems that increasingly plague this case and I'm not going to let [the defendant] . . . continue what I find to be his significant misconduct because he chooses not to be here.

"So I do find based on the evidence that's been presented to the court that [the defendant] is in wilful contempt of the court's judgment, which includes the separation agreement as modified from time to time by the court and the parties. And specifically, that he continues to disparage the plaintiff to communicate with the children concerning matters that are inappropriate, offensive and harmful to the children.

"In light of that contempt, it's the order of the court that on an interim basis the court suspends the right of [the defendant] to visitation with either child. Physical visitation will be allowed only with the specific consent of the [plaintiff] or the guardian ad litem. Such visitation must be supervised by a person or agency acceptable to the [guardian ad litem] or the actual presence of the [plaintiff] if she agrees to do so.

"Such visitation must take place within the state of Connecticut. Under no circumstances may [the defendant] remove or travel with either child outside the state of Connecticut or assist them in any way in leaving the state of Connecticut. Should [the defendant] choose to seek modification of this order he must appear here in the state of Connecticut at a properly scheduled time and place."

[5] The defendant also filed two motions for contempt on April 4 and May 14, 2018, a May 3, 2018 motion for a *Strobel* order; see *Strobel* v. *Strobel*, 92 Conn. App. 662, 886 A.2d 865 (2005); to preclude the plaintiff from filing further postdissolution motions without leave of court, a May 3, 2018 motion to remove the guardian ad litem, and a May 3, 2018 motion to compel compliance with his discovery request.

[6] In her motion to dismiss, the plaintiff averred that she and the minor children had been living in Tennessee for the past seven months. She further alleged that "[i]t would be an extreme financial burden on the plaintiff, caring for her two children, to have her come to any and continuous court hearings and depositions related to the repetitive already denied motions filed by the defendant. . . . It is financially impossible and extremely impractical to travel literally 1000 miles to Connecticut to start or continue with the same court hearings litigated for over the past six years. . . . The plaintiff has no financial means to secure childcare nor to travel nor to afford an attorney and is in continuous growing debt, especially as a result of the [nonpayment of alimony and child support by the defendant].

* * *

[T]he defendant filed these motions when he was living in the state of Florida when both parties were [not] living [in] Connecticut. . . . The defendant was physically closer to Tennessee and the [minor] children prior to his return to Connecticut after having been living for one full continuous year in Florida." (Emphasis omitted.)

[7] Although there is no indication that it was raised in the proceeding at trial, we note that General Statutes § 46b-115t (d) provides: "The court may order a party to pay for reasonable and necessary travel and expenses of a party to the child custody proceeding or the child who is outside the state."

[8] We agree with the defendant that the court's initial finding was clearly erroneous, as there is no evidence in the record to indicate that the defendant

was not living in Connecticut when the plaintiff filed her motion to dismiss on November 7, 2018. In its July 9, 2020 memorandum of decision on the defendant's motion to reargue, the court corrected that finding, stating that "[b]ased upon further review of the record . . . the defendant returned to Connecticut at the end of September, 2018."

[9] General Statutes § 46b-115*l* provides in relevant part: "(a) Except as otherwise provided in section 46b-115n, a court of this state which has made a child custody determination pursuant to sections 46b-115k to 46b-115m, inclusive, has exclusive, continuing jurisdiction over the determination until: (1) A court of this state or a court of another state determines that the child, the child's parents and any person acting as a parent do not presently reside in this state . . . ."

[10] General Statutes § 46b-115q (a) provides in relevant part that "[a] court of this state which has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum. . . ."

[11] The motions that were dismissed were the defendant's May 3, 2018 motion for a *Strobel* order, his May 3, 2018 motion to remove the guardian ad litem, his May 3, 2018 motion to compel, and his May 14, 2018 motion for contempt.

[12] General Statutes § 46b-115q (c) provides: "If a court of this state determines that it is an inconvenient forum and that a court of another state is a more appropriate forum, it shall stay the proceedings upon condition that a child custody proceeding be promptly commenced in another designated state and may impose any other condition the court considers just and proper."

[13] A prerequisite for such action under General Statutes § 46b-115q is that "[a] court of this state . . . has jurisdiction under this chapter to make a child custody determination . . . ."

[14] This court subsequently granted permission for the parties to file supplemental briefs on the issues related to the amended appeal. The defendant filed his supplemental brief on September 9, 2020. The plaintiff did not file a supplemental brief.

[15] At that hearing, the plaintiff was represented by Attorney Stacey Cox of the Victim Rights Center of Connecticut, Inc.

[16] On appeal, the defendant has not challenged the propriety of the court's decision to accept that substitute affidavit.

[17] In light of that conclusion, we do not consider the question of whether the trial court, in the first instance, possessed temporary emergency jurisdiction pursuant to General Statutes § 46b-115n (a) to issue the November 27, 2018 ex parte order when the minor children indisputably were not present in this state at that time.

[18] That undisputed fact likely explains why the trial court denied the defendant's May 8, 2018 application for an emergency ex parte order of custody.

[19] In its July 9, 2020 memorandum of decision on the defendant's motion to reargue, the court also concluded that it lacked jurisdiction to make an initial child custody determination pursuant to § 46b-115k. The defendant has raised no claim regarding the propriety of that determination in this appeal.

Moreover, we note that the court, in light of its conclusion that it lacked both exclusive, continuing jurisdiction pursuant to § 46b-115*l* and initial child custody jurisdiction pursuant to § 46b-115k, expressly abandoned its earlier ruling under the forum non conveniens doctrine, as codified in § 46b-115q, and vacated the stay issued in accordance therewith. As the court stated: "[T]he statutory requirements necessary for the court to assume continuing jurisdiction over the custody issues [have] not been established pursuant to . . . [§§] 46b-115k and . . . 46b-115*l*. Therefore, based upon the court's further review of the record, the memorandum of decision dated August 29, 2019, shall be amended to vacate the stay on the basis of inconvenient forum." The defendant in this appeal has not challenged that ruling.

[20] By its plain language, General Statutes § 46b-115k confers jurisdiction on "a court of this state . . . to make an initial child custody determination . . . ." General Statutes § 46b-115*l* similarly delineates the parameters of the "exclusive, continuing jurisdiction" of a Connecticut court when "a court of this state . . . [previously] has made a child custody determination . . . ."

[21] As one commentator remarked, "[b]y excluding proceedings involving monetary obligations, the [act] continues the idea of divided jurisdiction in matrimonial cases." R. Spector, "International Child Custody Jurisdiction

and the Uniform Child Custody Jurisdiction and Enforcement Act," 33 N.Y.U. J. International L. & Pol. 251, 262 n.40 (2000); see also *MJ* v. *CR*, Docket No. CAAP-17-0000696, 2021 WL 2679556, *6 (Haw. App. 2021) (noting "bifurcated jurisdiction" over child custody and child support matters); *Stevens* v. *Stevens*, 682 N.E.2d 1309, 1312 (Ind. App. 1997) ("[A] state may have jurisdiction to enter a dissolution decree, but such does not necessarily confer jurisdiction to make a child custody determination. Rather, jurisdiction over custody matters having an interstate dimension must be independently determined by application of that state's version of the [act]"); *DeWitt* v. *Lechuga*, 393 S.W.3d 113, 118 (Mo. App. 2013) (analysis under act "may well result in bifurcated adjudications, where one state adjudicates paternity and child support and another state adjudicates custody and parenting time"); *In re Dean*, 393 S.W.3d 741, 747 (Tex. 2012) ("Whether the Texas divorce action was filed first is irrelevant in determining jurisdiction over custody matters, as the two proceedings involve different inquiries. . . . [O]ne state may have jurisdiction over custody even if the divorce is decided by another state's court." (Citations omitted.)).