******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

Alvord, Cradle and Clark, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the judgment of the trial court denying his motion for modification of unallocated alimony and child support. At the time of dissolution in 2010, the parties had two minor children. The judgment of dissolution incorporated a separation agreement, which provided, inter alia, that the plaintiff would have legal and physical custody of the parties' children and that the defendant would pay unallocated alimony and child support in the amount of $1000 weekly. In 2014, by agreement of the parties, the defendant's unallocated alimony and child support was reduced from $1000 to $900 weekly. The 2014 agreement did not specify the amount of child support due to the plaintiff as a portion of the defendant's unallocated support, nor did the agreement expressly prohibit the modification of alimony. The defendant sought modification of the unallocated alimony and child support after the plaintiff and the children moved to Tennessee. During the hearing on the motion, the defendant identified, as substantial changes in circumstances, the plaintiff's cohabitation and the change in residence in 2021 of his older child, who was then eighteen years old, from the plaintiff's home to the home of the defendant. In support thereof, the defendant sought to have his older child testify as to his change in residence as well as to the plaintiff's cohabitation, which the trial court denied, stating that it did not need the older child's testimony. The trial court also heard the testimony of a private investigator as to the plaintiff's cohabitation, and the defendant entered exhibits in support thereof. The plaintiff was not present at the hearing. In denying the defendant's motion, the court found, inter alia, that the defendant had failed to prove a substantial change in circumstances and that the testimony of the private investigator was insufficient and not credible to support a finding of cohabitation. *Held*:

1. The trial court abused its discretion in denying the motion for modification with respect to the child support component of the unallocated support obligation because the court's finding that the defendant failed to demonstrate a substantial change in circumstances was clearly erroneous: this court concluded, on the basis of the undisputed evidence in the record, that the change in residence of the parties' older child, from the home of the plaintiff to the home of the defendant, amounted to a substantial change in circumstances pursuant to statute (§ 46b-86 (a)); moreover, the trial court's finding to the contrary was not supported by the evidence, as the court did not have any evidence before it that the defendant was not providing for the older child's necessary expenses and it did not make any findings based on the undisputed evidence that established a change in the older child's residence.

2. The trial court improperly denied the defendant's motion for modification without determining the child support component of the unallocated order, and this court, having determined that the defendant was entitled to a new hearing with respect to his motion to modify the child support component of the unallocated order, set forth the procedure applicable to the financial aspects of the modification of child support in the context of an unallocated support order on remand; the trial court should first unbundle the child support from the unallocated alimony and child support by determining the parties' net weekly income with the assistance of the 2014 financial affidavits, which the trial court had access to as they were part of the record, second, the trial court must calculate the presumptive support amount for the two children who, at that time, were minors, using the 2005 Child Support and Arrearage Guidelines in effect at the time of the parties' 2014 agreement, third, the trial court must ascertain the intent of the parties as to how the $900 weekly sum was to be divided because the 2014 agreement was not clear, and, finally,

the trial court must consider the newly determined 2014 child support award against the parties' current financial circumstances, which also must be determined due to the passage of time since the trial court initially addressed the defendant's request for modification.

3. The trial court abused its discretion in denying the defendant's motion for modification with respect to the alimony component of his unallocated support obligation: under the totality of the circumstances in the present case, this court concluded that the trial court misapplied the law at the time of the hearing on the motion for modification, as the trial court was under the misapprehension that the separation agreement precluded the termination of alimony, including on the basis of cohabitation, until the death of either party, and, contrary to the trial court's remarks during the hearing, the separation agreement did not provide that the unallocated support obligation was nonmodifiable as to amount or term pursuant to statute (§ 46b-86 (a)); moreover, the trial court, having incorrectly expressed that cohabitation could not form a basis for modification of alimony, essentially misled the defendant in forgoing his opportunity to present his older child's testimony, which the court had not precluded on evidentiary grounds, as additional evidence in support of the defendant's allegation of the plaintiff's cohabitation; furthermore, despite the trial court having determined that the defendant failed to provide satisfactory evidence of cohabitation, the trial court did not identify any particular aspects of the private investigator's testimony that it specifically discredited, nor did it offer any explanation of its determination that the private investigator's testimony, as a whole, was not credible; accordingly, the defendant was entitled to a new hearing on the motion for modification.

Submitted on brief January 10—officially released February 27, 2024

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of Fairfield, where the court, *Gould, J.*, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Egan, J.*, granted the plaintiff's motion to dismiss the defendant's motion to modify unallocated alimony and child support obligations, from which the defendant appealed to the Appellate Court, *Alvord*, *Elgo* and *Alexander*, *Js.*, which reversed the trial court's judgment and remanded the case to that court for further proceedings; subsequently, the court, *Hon. Eddie Rodriguez, Jr.*, judge trial referee, denied the defendant's motion for modification of unallocated alimony and child support, from which the defendant appealed to this court. *Reversed in part*; *further proceedings*.

*James Kennedy*, self-represented, filed a brief as the appellant (defendant).

*Opinion*

ALVORD, J. In this postjudgment dissolution matter, the self-represented defendant, James Kennedy, appeals from the judgment of the trial court denying his motion for modification of his unallocated alimony and child support obligation. On appeal, the defendant claims[1] that the court abused its discretion in (1) determining that the change in residence of the parties' older child did not constitute a substantial change in circumstances, (2) denying the defendant's motion without determining the child support component of the unallocated order, (3) interpreting the unallocated support obligation as set forth in the parties' separation agreement to be nonmodifiable, and (4) disallowing the testimony of the parties' older child as to the alleged cohabitation of the plaintiff, Fatima K. De Almeida-Kennedy.[2] We reverse in part the judgment of the court.[3]

The following facts and procedural history are relevant to our resolution of this appeal. The court, *Gould, J.*, dissolved the parties' marriage on August 2, 2010. At the time of the dissolution, the parties had two minor children.[4] The judgment of dissolution incorporated by reference the parties' separation agreement dated August 2, 2010 (separation agreement). The separation agreement provided, inter alia, that the plaintiff would have legal and physical custody of the parties' children and the defendant would have supervised visitation.

Section 3.1 of the separation agreement provided that the defendant would pay unallocated alimony and child support to the plaintiff in the amount of $1000 weekly. It further provided: "Said unallocated alimony and child support shall end on the death of either [p]arty. The [p]arties agree that at present both children have been determined to be [s]pecial [n]eeds [c]hildren as defined by the Connecticut [s]tatutes." In Article IV of the separation agreement, titled Alimony, the parties agreed in § 4.2 that "[t]he unallocated alimony and child support provided in 3.1 above is based on an earning capacity of the [defendant] of $90,000. The [plaintiff] shall not ask for an increase until the [defendant's] actual weekly earnings exceed this annualized amount." Section 4.3 of Article IV further provided that "[t]he [defendant] agrees to not seek a downward modification of unallocated alimony and child support until the [plaintiff's] annualized earnings exceed $50,000 per year."

On December 9, 2014, the dissolution judgment was modified by agreement of the parties (2014 agreement) to provide, inter alia, that the defendant's unallocated child support and alimony would be reduced to $900 weekly.[5] The 2014 agreement also removed the provision in Article IV, § 4.3, that prohibited the defendant from seeking a downward modification in his support payment until the plaintiff's annualized earnings exceeded $50,000 per year. The 2014 agreement pro-

vided the parties joint legal custody of their children, with primary physical custody remaining with the plaintiff.

On April 4, 2018, the defendant filed the motion for modification at issue in this appeal, in which he sought, inter alia, modification of his unallocated alimony and child support obligation. The defendant's motion requested that "the court . . . enter an order establishing the child support portion of unallocated, as established by the financial affidavits provided by both parties on August 2, 2010, to be $179 per week dating from August 2, 2010, through present." It further requested that the court enter an order terminating alimony as of the date of service of the motion to modify. In the event that the court declined to terminate alimony, the defendant requested that alimony be set at $1 per year until the child support for the minor children terminated and that, at that point, alimony be terminated.

The defendant recited, as the legal basis for his requested modification, that "no court . . . has ever followed Connecticut statutory law nor case law in terms of making a determination on the record of the amount of child support due commencing August 2, 2010."[6] In support of his requested modification, the defendant alleged, inter alia, that the "proper amount of child support due to the plaintiff" had not been determined by a court; the plaintiff had sought, by herself and through various state and federal agencies, to collect from the defendant 100 percent of the unallocated support "as though it were child support"; the defendant had lost his primary client in January, 2018; the defendant was under the care of a psychiatrist; and the "termination date of alimony that was contemplated by the parties at the time of dissolution is not reflected within the [separation] agreement."

The court, *Egan, J.*, dismissed the motion on the basis that it lacked subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (act), General Statutes § 46b-115 et seq., because all parties no longer lived in Connecticut. See *De Almeida-Kennedy* v. *Kennedy*, 207 Conn. App. 244, 253, 262 A.3d 872 (2021). The court noted, inter alia, that the defendant had moved to Florida in October, 2017, that the plaintiff had averred in an affidavit that she and the parties' children had moved to Tennessee in April, 2018, and that they had lived in Franklin, Tennessee for at least seven months as of November 7, 2018.[7] Id., 251–52. On appeal, this court determined that the court improperly dismissed the portion of the defendant's motion to modify that related to his support obligation, as it was beyond the purview of the act. Id., 264. Accordingly, this court reversed the judgment with respect to the defendant's motion to modify the unallocated alimony and child support order and remanded the case for further proceedings. Id., 265.

On May 13, 2022, the court, *Hon. Eddie Rodriguez, Jr.*, judge trial referee, held a hearing on the defendant's motion to modify. The defendant appeared and the plaintiff did not.[8] A motion to compel, filed by the defendant, also was scheduled for hearing on that day. Addressing that motion, the defendant argued that, "as of today, I have no updated financial affidavit nor any financial compliance from the plaintiff and have not had it for now going on four and a half years. And, at this point I . . . realize that a . . . motion to compel probably—I'm prepared to go forward in absence of her compliance, but I have . . . if the court pleases, I do have copies of depositions where she has not appeared. But at this time, I'd just . . . like to say that, you know, I . . . haven't been able to get anything, any information, and I've sent out multiple requests for production in the past. I get the same response every time which is either, well, no response, or . . . that she doesn't have to comply." The court stated that it was denying the defendant's motion to compel, without prejudice, because "there's no evidence anywhere in the file, no filing that that motion has been served."

The court then held a hearing on the defendant's motion for modification. The defendant testified to his understanding of the separation agreement's support provision, pursuant to which he contended that the only restriction on modification was related to the parties' earnings. The defendant also explained that, as a result of the plaintiff seeking to collect on a child support arrearage he owed, he lost the ability to travel internationally. He specifically requested that the court make a determination "of what child support should've been in 2010 at the time of" the separation agreement. The defendant represented to the court that, "according to the [Child Support and Arrearage Guidelines] at the time, [child support] would've been [$]193 a week for two—for my two sons." The defendant identified, as substantial changes in circumstances, the plaintiff's cohabitation and the change in residence of the parties' older child, from the plaintiff's home to the defendant's home, in November, 2021.

With respect to alimony, the defendant stated: "In 2018, when my ex-wife went to Tennessee, she started cohabitating with a gentleman named Joseph Meade. I have two witnesses that are prepared here today to testify as to the cohabitation; one who was living in the house and one who's a private investigator. At that time, I was requesting—or I—I would like to have the court order that alimony be terminated as of that cohabitation on the basis of a change in circumstances and on the basis that we had a nine year marriage and already this is now—we're now looking at thirteen years later where alimony is still in the discussion. It was never my understanding, ever, that alimony was going to be as long as it has been."

The defendant also presented the testimony of Amy Drescher, a licensed private investigator from Franklin, Tennessee, who participated in an investigation of the plaintiff at the defendant's request from December, 2018, through spring, 2019. Drescher testified that she saw the parties' two children being picked up and dropped off by the school bus at 266 Rich Circle, in Franklin, Tennessee (Rich Circle address). Although she never saw the plaintiff at the Rich Circle address, she did observe a vehicle registered to the plaintiff consistently parked in the driveway. The address for the vehicle's registration was the plaintiff's post office box in Thompson Station, Tennessee. Drescher also testified that she observed a vehicle registered to the Rich Circle address in the name of Joseph Meade and a large box at the end of the driveway addressed to Meade. The defendant entered into evidence a photograph of the Rich Circle address showing the driveway, the residence, and the box at the end of the driveway. On one occasion, Drescher testified that she saw Meade drop one of the children off at the Rich Circle address. She also testified that she had access to a proprietary database, which pulls information from different sources, and that the Rich Circle address did appear in that database for Meade. Drescher testified that she did not have any additional information connecting the plaintiff to the Rich Circle address. Drescher then testified regarding her training and experience,[9] in response to questions posed by the court. Drescher also testified that Meade is the owner of the Rich Circle property and that he is a licensed real estate agent. Drescher testified that the plaintiff had a licensed business in Tennessee called Tasty Good Eats. She testified that the filing information for the business showed that it was registered to an address in Murfreesboro, Tennessee, which location also was owned by Meade.

On May 27, 2022, the defendant filed a memorandum in support of his proposed orders with respect to his motion for modification. On November 10, 2022, the court issued an order denying the defendant's motion for modification. The order stated in relevant part: "Although the defendant claimed to be entitled to a reduction and modification of the unallocated alimony and child support, he failed to prove a substantial change in circumstances. The initial judgment called for payment of unallocated alimony and child support by an agreement filed on August 2, 2010. A few handwritten changes were made to the agreement by the parties at the last minute. It precluded specific child support but included unallocated child support and alimony in the amount of $1000 per week. At that time, there were two minor children.

"The court finds that at no time did [the defendant] comply with any of the support orders. He essentially paid whatever amounts which he chose to pay, and he

always paid less than the original order.

"As a result, and over the years, a substantial arrearage has accumulated. The court finds that [the defendant] has moved for modification of a judgment with unclean hands.

"Also, [the defendant] has attempted but failed to provide the court satisfactory evidence of cohabitation. He did not provide the court sufficient evidence to warrant a finding of cohabitation.

"Equally as important is the fact that the judgment file sought to be modified has consistently been unallocated alimony and child support throughout the long history of hearings.

"The testimony of Amy [D]rescher (who traveled from Franklin, Tennessee [to] appear as a witness), is found to be not credible, also insufficient to prove cohabitation as required by law." This appeal followed.[10]

Before turning to the defendant's claim on appeal, we set forth the well settled standard of review in family matters. "An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Therefore, to conclude that the trial court abused its discretion, we must find that the court either incorrectly applied the law or could not reasonably conclude as it did." (Internal quotation marks omitted.) *O'Neill* v. *O'Neill*, 209 Conn. App. 165, 171–72, 268 A.3d 79 (2021); see also *Gabriel* v. *Gabriel*, 324 Conn. 324, 336, 152 A.3d 1230 (2016) ("[n]otwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law" (internal quotation marks omitted)).

## I

We first address the defendant's claim that the court abused its discretion in denying his motion for modification with respect to the child support component of his unallocated support obligation because the court

improperly determined that the change in residence of the parties' older child, from the plaintiff's home to the defendant's home, did not constitute a substantial change in circumstances. We conclude that the court's finding that the defendant failed to demonstrate a substantial change in circumstances is clearly erroneous.

"[General Statutes §] 46b-86 governs the modification or termination of an alimony or support order after the date of a dissolution judgment. When, as in this case, the disputed issue is alimony [or child support], the applicable provision of the statute is § 46b-86 (a), which provides that a final order for alimony [or child support] may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . Under that statutory provision, the party seeking the modification bears the burden of demonstrating that such a change has occurred. . . . To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order." (Footnote omitted; internal quotation marks omitted.) *Fox* v. *Fox*, 152 Conn. App. 611, 619–20, 99 A.3d 1206, cert. denied, 314 Conn. 945, 103 A.3d 977 (2014). "A finding of a substantial change in circumstances is subject to the clearly erroneous standard of review." (Internal quotation marks omitted.) *Flood* v. *Flood*, 199 Conn. App. 67, 78, 234 A.3d 1076, cert. denied, 335 Conn. 960, 239 A.3d 317 (2020). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Tilsen* v. *Benson*, 347 Conn. 758, 796–97, 299 A.3d 1096 (2023).

As our Supreme Court has explained, "ensuring that the custodian receives the support payments is consistent with the fundamental purpose of child support, which is to provide for the care and well-being of minor children. . . . General Statutes § 46b-84 (a), which impos[es] a duty on divorced parents to support the minor children of their marriage, creates a corresponding right in the children to such support. . . . This right does not come through their [parental custodian]. . . . Child support therefore furnishes the custodian with the resources to maintain a household to provide for the care and welfare of the children; in essence, the custodian holds the payments for the benefit of the child. Consequently, once custody changes, there is no immediately apparent reason for the former custodian to continue to receive the payments because the presumption is that the former custodian is no longer pri-

marily responsible for providing the children's necessary living expenses, including food, shelter and clothing. In turn, permitting the diversion of funds away from the parent providing for the care and well-being of minor children when custody changes, pursuant to the parents' contractual agreement, would contravene the purpose of child support." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 555, 46 A.3d 112 (2012).

In the present case, the defendant testified that the parties' older child, who was eighteen years old at the time of the hearing, had moved to live with him in November, 2021.[11] In addition, the defendant represented that the child was present in court on the date of the hearing to testify. The plaintiff failed to attend the hearing and, consequently, the court did not have before it any evidence that the defendant was not providing for the child's necessary expenses.

In its order denying the defendant's motion for modification, the court did not make any findings based on the undisputed evidence establishing a change in the child's residence. The court stated only that the defendant had "failed to prove a substantial change in circumstances." See *Munson* v. *Munson*, 98 Conn. App. 869, 875, 911 A.2d 1158 (2006) (reversing judgment because decision and articulation were irreconcilable, and noting that, where party seeking modification of child support had alleged that parties' two minor children were residing primarily in his care, "the factual question of the children's residence must be resolved for a determination of the disputed financial issues").[12]

On the basis of the wholly undisputed evidence in the record, we are persuaded that the change in residence of the parties' older child from the home of the plaintiff to the home of the defendant amounted to a substantial change in circumstances, and the court's finding to the contrary is not supported by the evidence.[13] The proper remedy is for this court to reverse the judgment in part and remand the case for a new hearing on the motion for modification of the child support component of the defendant's unallocated support obligation as set forth in the 2014 agreement.

II

We next address the defendant's claim on appeal that the court improperly denied his motion for modification without determining the child support component of the unallocated order. Although we already have determined in part I of this opinion that the defendant is entitled to a new hearing with respect to his motion to modify the child support component of the unallocated order, in order to provide guidance on remand, we set forth the procedure applicable to the financial aspects of the modification of child support in the context of

an unallocated support order, a process this court has described as "unbundling." See *Ross* v. *Ross*, 200 Conn. App. 720, 731, 239 A.3d 1280 (2020).

Our Supreme Court has explained that, "[e]ven though an unallocated order incorporates alimony and child support without delineating specific amounts for each component, the unallocated order . . . necessarily includes a portion attributable to child support in an amount sufficient to satisfy the guidelines." *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 558.[14] Accordingly, to decide a motion to modify, "a trial court must determine what part of the original decree constituted . . . child support and what part constituted . . . alimony." Id.; see also *Brown* v. *Brown*, 199 Conn. App. 134, 152, 235 A.3d 555 (2020) ("[i]n other words, before the court may rule on the motion to modify, it must unbundle the unallocated support").

The court in *Tomlinson* further explained that, "[g]iven that [t]he original decree [of dissolution] . . . is an adjudication by the trial court as to what is right and proper *at the time it is entered* . . . the trial court must first determine what portion of the unallocated order represented the child support component at the time of the dissolution." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 558. The absence of a specific finding from the court that issued the original order or prior modification as to the amount of child support does not prevent the trial court from ruling on a motion for modification. *Gabriel* v. *Gabriel*, supra, 324 Conn. 338. "Instead . . . if the court issuing the original support order fails to make the necessary specific findings, the appropriate remedy is for the court hearing the motion for modification to make the necessary findings." Id. "Additionally, because questions involving modification of alimony and support depend . . . on conditions as they exist *at the time of the hearing* . . . it is necessary to evaluate the parties' present circumstances in light of the passage of time since the trial court's original calculation." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Tomlinson* v. *Tomlinson*, supra, 558.

Finally, "[i]n modifying the [unallocated child] support [and alimony] order in a subsequent proceeding, a trial court may consider the same factors applied in the initial determination to assess any changes in the parties' circumstances since the last court order. . . . [General Statutes §] 46b-215b (c) mandates that the guidelines shall be considered in addition to and not in lieu of the criteria for such awards established in [§§] 46b-84 [and] 46b-86 . . . . Specifically, § 46b-84 (d) stipulates that the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health,

station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 559.

In the present case, because the defendant's unallocated support obligation was modified by the parties' 2014 agreement, the defendant was required to demonstrate, and did demonstrate; see part I of this opinion; a substantial change in circumstances that had arisen subsequent to that modification.[15] See *Malpeso* v. *Malpeso*, 165 Conn. App. 151, 169, 138 A.3d 1069 (2016) ("[i]t is . . . well established that when a party, pursuant to § 46b-86, seeks a postjudgment modification of a dissolution decree that earlier had been modified, he or she must demonstrate that a substantial change in circumstances has arisen subsequent to the entry of the earlier modification" (emphasis omitted; internal quotation marks omitted)). Our review of the file reveals that the trial court, in fact, had before it materials to assist it in determining the child support portion of the unallocated order, as modified by the parties' 2014 agreement. Specifically, the court had on file financial affidavits filed by both the plaintiff and the defendant at the time of the 2014 agreement and a child support guidelines worksheet prepared by the defendant and submitted in connection with the 2014 agreement.

On remand, the court should unbundle the child support from the unallocated alimony and child support. See *Ross* v. *Ross*, supra, 200 Conn. App. 738 (failure to unbundle child support and alimony awards from unallocated order and failure to apply child support guidelines required reversal and remand for further proceedings). First, the court must determine the parties' net weekly income with the assistance of the 2014 financial affidavits. See *Malpeso* v. *Malpeso*, supra, 165 Conn. App. 171. Second, the court must calculate the presumptive support amount for the two children who, at that time, were minors, using the 2005 Child Support and Arrearage Guidelines, which were the guidelines in effect at the time of the parties' 2014 agreement. Id. Third, the court must also ascertain the intent of the parties because the 2014 agreement was not clear as to how the $900 weekly sum was to be divided.[16] See id., 172 ("[b]ecause support agreements that are not in accordance with the financial dictates of the guidelines are not enforceable unless one of the guidelines' deviation criteria is present, such as when the terms of the agreement are in the best interest of the child . . . the court must determine what was intended to be child support within the unallocated alimony and child support order to ensure the agreement did not run afoul of the guidelines" (citation omitted; internal quotation marks omitted)).[17] Finally, the court must consider the

newly determined 2014 child support award against the parties' current financial circumstances. Additionally, we note that, due to the passage of time since the trial court initially addressed the defendant's request for modification, reconsideration of the parties' present circumstances is necessary. See *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 561.

## III

The defendant's remaining two claims on appeal are interrelated, and we address them together. The defendant claims that the court improperly denied his motion for modification of the alimony component of his unallocated support obligation because the court interpreted the unallocated support provision of the separation agreement as nonmodifiable and disallowed the parties' older child from testifying, while concurrently ruling the defendant's witness not credible. We agree with the defendant that the court abused its discretion.

We first set forth relevant principles of law with respect to the modification of alimony on the basis of cohabitation. "Our Supreme Court has allowed a party obligated to pay alimony to request, pursuant to § 46b-86 (b), that alimony be suspended, reduced, or terminated in the event of cohabitation in cases where a dissolution judgment requires payment of alimony, but contains no provision regarding the effect of cohabitation on the obligation to pay alimony. . . . This court, however, has held that, because the provisions in an incorporated separation agreement prevail over § 46b-86 (b), if the incorporated separation agreement limits modification of the amount or duration of alimony, and does not make an exception for modification in the event of cohabitation, the court does not have access to its remedial powers pursuant to § 46b-86 (b)." (Citation omitted.) *Fazio* v. *Fazio*, 162 Conn. App. 236, 249–50, 131 A.3d 1162, cert. denied, 320 Conn. 922, 132 A.3d 1095 (2016).

"[U]nder § 46b-86 (b), a finding of cohabitation requires that (1) the alimony recipient was living with another person and (2) the living arrangement caused a change of circumstances so as to alter the financial needs of the alimony recipient. . . . Pursuant to § 46b-86 (b), the nonmarital union must be one with attendant financial consequences before the trial court may alter an award of alimony. . . . The change in the need of the alimony recipient need not be substantial . . . [but] the difference must be measurable in some way . . . . [T]he court must have the ability to compare the plaintiff's financial needs at different points in time to determine whether those needs either have increased or decreased over time." (Citations omitted; internal quotation marks omitted.) *Murphy* v. *Murphy*, 181 Conn. App. 716, 722, 188 A.3d 144 (2018).

The following additional procedural history is rele-

vant to resolving this claim. During the hearing, the court was under the misapprehension that the separation agreement precluded the termination of alimony, including on the basis of cohabitation, until the death of either party.[18] Specifically, in response to the defendant's stated concern that the plaintiff "will continue to collect child support as unallocated as . . . long as . . . she's breathing," the court stated, "that's what you agreed to. You agreed to that." The court continued: "You didn't agree to terminate, you agreed to modify in the event certain events occurred. So, you didn't—and—and it did not include cohabitation either, by the way. It only included in the event of the death of either party it shall terminate. That's what you agreed to. Very clear, it's not ambiguous at all to me."

The court additionally stated: "I will hear you and I will hear from your investigator, but the fact that she's cohabitating is not a grounds to terminate the alimony based on your agreement, based upon the judgment of 2010."

The defendant alerted the court to his understanding that cohabitation may form a basis for the termination of alimony unless expressly barred by the agreement and requested permission to submit a memorandum of law on that point, which the court permitted. In his memorandum of law, the defendant argued that because the parties' separation agreement did not preclude modification of the unallocated support obligation, § 46b-86 (b) permits the termination of alimony upon a finding of cohabitation.

At the end of the hearing, the defendant returned to an issue he had identified at the beginning of the hearing, which was that he wished to have the parties' eighteen year old son, who was present in court throughout the hearing, testify in support of his claim that the plaintiff was cohabitating. In the middle of the hearing, the court expressed its disinclination toward the parties' son testifying, stating: "[E]ven if you had your child come in, and I don't like to bring them in, because unless it's really necessary, and I don't think it is, to be candid, I don't like to see a—any kid testify and pick sides in a dispute between his parents because until either of you die you will be his parents." At the conclusion of the private investigator's testimony, the court asked the defendant whether he had anything else, and the following colloquy occurred:

"[The Defendant]: Your Honor, I just—I'd just say that I wholeheartedly agree that I'd—I would not—I would not want to have my son as a witness unless Your Honor feels that—

"The Court: I don't need his testimony.

"[The Defendant]: Okay. Great."

In its order denying the defendant's motion for modification, the court stated that the defendant had failed

to "provide the court satisfactory evidence of cohabitation," and found the private investigator's testimony "not credible, also insufficient to prove cohabitation as required by law."

Under the circumstances of this case, we are persuaded that the trial court misapplied the law at the time of the hearing and that its misapplication of the law resulted in an abuse of its discretion. First, contrary to the court's remarks during the hearing, the separation agreement at issue in this matter did not provide that the unallocated support obligation was "nonmodifiable" as to amount or term. Section 46b-86 (a) provides in relevant part: "*Unless and to the extent that the decree precludes modification*, any final order for the periodic payment of permanent alimony or support . . . may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party . . . ." (Emphasis added.); see also *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 548 ("unambiguous provisions precluding modification of alimony are enforceable pursuant to the language of § 46b-86 (a)"). The separation agreement provision stating that "[s]aid unallocated alimony and child support shall end on the death of either party" does not constitute an unambiguous nonmodification provision,[19] nor does it preclude the termination of alimony in the event of cohabitation. Cf. *Gabriel* v. *Gabriel*, supra, 324 Conn. 343 (agreement at issue stated that unallocated alimony and support payments were for defendant's support and were nonmodifiable by defendant as to both amount and duration but were modifiable by plaintiff upon substantial change in circumstances, not including defendant's cohabitation or her earnings up to $100,000). Moreover, as noted previously, the 2014 agreement removed the provision in Article IV that prohibited the defendant from seeking a downward modification in his support payment unless the plaintiff's earnings exceeded $50,000 per year. Accordingly, the court's remarks during the hearing regarding modification reflect an erroneous understanding of the law.

Second, it is difficult for this court to reconcile the court's handling of the defendant's proffer of his son's limited testimony with the court's treatment of this issue in its written order. Having already incorrectly expressed that cohabitation could not form a basis for modification of alimony, the court, when the defendant revisited the subject of his son testifying as to cohabitation, did not preclude the testimony on evidentiary grounds, but rather stated: "I don't need his testimony." The defendant essentially was misled into forgoing his opportunity to present the additional evidence as to cohabitation, which is important in light of the court's written decision, in which it determined that the defendant had failed to provide satisfactory evidence of cohabitation. Additionally, although we are mindful that

we must "defer to the trier of fact's assessment of credibility"; (internal quotation marks omitted) *Nuzzi* v. *Nuzzi*, 164 Conn. App. 751, 773, 138 A.3d 979 (2016), cert. granted, 323 Conn. 902, 150 A.3d 684 (2016) (appeal withdrawn October 12, 2017); we are confounded by the court's apparent wholesale discrediting of the uncontroverted testimony of the licensed private investigator. The court did not identify any particular aspects of Drescher's testimony that it specifically discredited, nor did it offer any explanation of its determination that the testimony as a whole was not credible.

Finally, it is difficult for this court to comprehend the significance of the court's finding that "[e]qually as important is the fact that the judgment file sought to be modified has consistently been unallocated alimony and child support throughout the long history of hearings." As described previously in this opinion, our appellate courts consistently and clearly have set forth the steps necessary to modify the components of an unallocated support order. Under the totality of the circumstances in this case, we are convinced that the court applied the wrong standard of law and, consequently, abused its discretion in denying the defendant's motion for modification of the alimony component of his unallocated support obligation and that the defendant is entitled to a new hearing.

The judgment is reversed with respect to the postdissolution order denying modification of the unallocated alimony and child support order and the case is remanded for a new hearing on the defendant's motion for modification; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] We address the claims in a different order from that in which they were briefed, and we address the third and fourth claims together because they are interrelated.

[2] On September 20, 2023, this court ordered the plaintiff to file her overdue brief on or before October 4, 2023. The plaintiff failed to file a brief as ordered. This court granted the defendant's request to waive oral argument. We, therefore, have considered this appeal on the basis of the defendant's brief, the appendix, and the record. See *Marino* v. *Marino*, 222 Conn. App. 902, 903 n.1, 302 A.3d 953 (2023).

[3] The defendant also requested other modifications in his motion. The court denied the defendant's motion in its entirety. The defendant's appeal is limited to the issues of child support and alimony.

[4] The parties' children were born in November, 2003, and August, 2005.

[5] The parties stipulated to an arrearage of $43,090, and the 2014 agreement provided that the defendant would pay $200 weekly toward that arrearage.

[6] The defendant also alleged in his motion for modification that "[t]here has been a substantial change in circumstances since the entry of the last order by the court, on September 29, 2017." In December, 2015, the defendant had filed a prior motion for modification, seeking, inter alia, that his unallocated alimony and child support obligation be modified. After several hearings, on September 29, 2017, the court, *Wenzel, J.*, granted in part and denied in part the motion. The court denied the defendant's requested modification of his unallocated support obligation, stating: "The defendant admits there is no claim for any substantial change in circumstance in the motion and the court finds there was no sufficient evidence of such in any event." *De Almeida-Kennedy* v. *Kennedy*, 188 Conn. App. 670, 673 n.2, 205 A.3d 704, cert. denied, 332 Conn. 909, 210 A.3d 566 (2019). On appeal, this court concluded that the court did not abuse its discretion in denying the requested

modification. Id., 682. Because the court's order of September 29, 2017, did not modify the defendant's unallocated support obligation, the operative date for the determination of a substantial change in circumstances remains the date of the 2014 agreement. See *Demartino* v. *Demartino*, 79 Conn. App. 488, 495, 830 A.2d 394 (2003).

[7] "[T]he plaintiff filed a memorandum of law in support of her motion to dismiss, which was accompanied by multiple exhibits, including a copy of the individual educational program for her minor son prepared by Williamson County Schools in Franklin, Tennessee for the period beginning May 7, 2018, and an electrical bill dated June 5, 2018, that lists the plaintiff as the account holder for a 'service address' located in Franklin, Tennessee. In addition, the plaintiff submitted an affidavit that recited certain details regarding her relocation to Tennessee." *De Almeida-Kennedy* v. *Kennedy*, supra, 207 Conn. App. 256.

[8] The clerk stated on the record that notice of the hearing had been provided to the plaintiff to a post office box in Thompson Station, Tennessee, which was the address on file in her appearance. The court found that the plaintiff was provided notice of the hearing.

The court denied three motions filed by the plaintiff for failure to prosecute.

[9] Drescher testified that she has been licensed as a private investigator for twenty years and is also a licensed private investigation agency owner. She testified that she was required to pass an examination in order to become licensed. She further testified that she participates in continuing education in her field and has served as a guest speaker for the Tennessee Bar Association.

[10] The defendant filed a motion for articulation, which the trial court summarily denied. Although the defendant attempted to file a motion for review with this court, it was returned by the Office of the Appellate Clerk for noncompliance with the rules of appellate procedure, and the defendant did not refile it thereafter.

[11] The following colloquy occurred:

"[The Defendant]: Once my ex-wife started cohabitating, that was a change in circumstance, and then I've had further changes in circumstance. In November of last year my son, my eldest son moved in with me. Since November of last year, he's been living with us.

"The Court: November of what year?

"[The Defendant]: November, 2021.

"The Court: How old's your son now?

"[The Defendant]: Eighteen.

"The Court: As of when?

"[The Defendant]: November . . . 2021.

"The Court: So he turned 18.

"[The Defendant]: Yes.

"The Court: And how old is the younger one?

"[The Defendant]: Sixteen.

"The Court: Who's the sixteen year old living with?

"[The Defendant]: His mom.

"The Court: All right. Please continue."

[12] The court also "found" that the defendant had moved for modification with unclean hands on the basis of his failure to comply with the support orders. "The doctrine of unclean hands expresses the principle that where a [party] seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . For a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands. . . . The clean hands doctrine is applied not for the protections of the parties but for the protection of the court. . . . It is applied . . . for the advancement of right and justice. . . . The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct with regard to the matter in litigation." (Internal quotation marks omitted.) *Nuzzi* v. *Nuzzi*, 164 Conn. App. 751, 763–64, 138 A.3d 979, cert. granted, 323 Conn. 902, 150 A.3d 684 (2016) (appeal withdrawn October 12, 2017).

We need not address the court's reference to the doctrine of unclean hands because it appears to be of no consequence given that the court decided the defendant's motion to modify on the basis of its conclusions that he failed to demonstrate a substantial change in circumstances and failed to prove cohabitation.

[13] In his appellate brief, the defendant relies on General Statutes § 46b-224, which provides in relevant part: "Whenever . . . the Superior Court,

in a family relations matter . . . orders a change or transfer of the . . . custody of a child who is the subject of a preexisting support order, and the court makes no finding with respect to such support order, such . . . custody order shall operate to: (1) Suspend the support order if . . . custody is transferred to the obligor under the support order . . . ." We need not address his argument pursuant to § 46b-224 because we conclude that the court's determination that the undisputed change in residence of the parties' older child did not amount to a substantial change in circumstances is clearly erroneous.

[14] In *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 543, the parties' separation agreement provided that the unallocated alimony and child support was nonmodifiable as to the amount and term of payments. Our Supreme Court determined that such an order was modifiable upon a change in custody because General Statutes § 46b-224 provides for the modification of child support upon a change of custody. Id., 549–50.

Although the present case differs from *Tomlinson* in that the present unallocated order was not, by its terms, nonmodifiable; see part III of this opinion; the same unbundling requirements apply. See *Ross* v. *Ross*, supra, 200 Conn. App. 731 n.9.

[15] The defendant maintains in his appellate brief that "the trial court did not have the discretion not to make a determination of the amount of child support that would have applied per the guidelines on August 2, 2010, calculate the payments made toward that amount, and declare the amount past due, if any, prior to addressing the modifiability or termination of aspects of the unallocated order." We are not persuaded that the court was required to make a determination as of August 2, 2010, because the defendant's unallocated support obligation was modified by the parties' 2014 agreement, rendering 2014 the operative date.

[16] If the plaintiff again fails to participate in the hearing on remand, the court may consider the materials in its file together with the defendant's presentation of evidence.

[17] In *Tomlinson*, our Supreme Court noted that "the trial court improperly may have relied solely on the presumptive guidelines amount in calculating the portion attributable to child support at the time of dissolution. Although there is a rebuttable presumption that the figure arrived at under the guidelines is the proper amount of child support; see General Statutes § 46b-215b (a); the trial court at the original dissolution proceeding in 2005 had discretion to deviate from such amount upon consideration of factors, such as the coordination of total family support, shared physical custody, extraordinary disparity in parental income and the best interests of the children. Although it is reasonable to conclude that the trial court found that the unallocated order provided adequate support when it incorporated the parties' separation agreement into the judgment, it does not follow necessarily that the child support portion was equivalent to the presumptive guidelines amount." *Tomlinson* v. *Tomlinson*, supra, 305 Conn. 560–61.

[18] The following colloquy occurred:

"The Court: Said [provision reads that] unallocated alimony and child support shall end on the death of either party. You're aware of that?

"[The Defendant]: Yes.

"The Court: Okay. And no one's died yet, right, thank God?

"[The Defendant]: Right.

"The Court: Right. And then it goes on to talk about other things that are not really relevant to this proceeding. So, I just want to make sure that that is what you agreed to.

"[The Defendant]: Yes. And I—I want to point out to the court that our agreement was nothing—the shall end on the death of either party, was done for tax reasons.

"The Court: Doesn't matter why it was done. It was an agreement.

"[The Defendant]: Yes."

The court continued: "The agreement is in writing for a good reason. The agreement is signed and the judges, myself included, we always ask the parties about the agreement. Do you understand the agreement, are you voluntarily entering, do you have any questions about the agreement, are you satisfied with the legal representation you have received by the attorney of your choice? So, just keep that in mind because we can't go back, you know, to 2010 with what you're presenting me so far. I haven't finished hearing you, and I don't know if I need to hear from your children either, because I don't like to hear from children in divorce cases unless it's really necessary, and so far the only thing he can help me with is where [the plaintiff is] located and maybe her lifestyle and maybe cohabitation. And

you mentioned that you have an investigator that has testimony that—that the investigator's willing to offer. That's all well and good, but you made these agreements with your ex-wife and with legal advice, that multiplies the burden you have to modify that. Just want to be very clear here."

[19] We note that other provisions of the parties' separation agreement reinforce our conclusion that the separation agreement cannot logically be read to require nonmodifiable alimony payments until the death of either party. For example, § 7.2 of the separation agreement, providing that the plaintiff may claim the minor children as dependents for purposes of the tax exemption, provides in relevant part: "In the event the court should modify the unallocated alimony and support, this provision may be modified." Additionally, § 9.3 of the separation agreement requires the defendant to maintain a policy of life insurance with a face value of $500,000, "payable to the [plaintiff] for so long as he shall have an alimony obligation."

---